Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Arlington Field Office
2550 South Clark Street
Suite 2001
Arlington, VA 22202
(571) 457-7200
(505) 407-3863 (Direct)
(703) 603-1812 (Fax)
(866) 231-3087 (Toll Free)

April 15, 2025

OGDEN MURPHY WALLACE PLLC
ATTN: ADAM SNYDER
701 5TH AVE STE 5600
SEATTLE, WA 98104

# NOTICE OF DECISION

Appellant: INNOVATIVE WOUND HEALING & DERMATOLOGY
OMHA Appeal Number: 3-14494568214

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

## What if I disagree with the decision?

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

**How much time do I have to file an appeal?**

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

**How do I file an appeal?**

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**<u>How will the Medicare Appeals Council respond to my appeal?</u>**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**<u>Questions?</u>**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

[redacted]

[redacted]

Noridian Healthcare Solutions
Noridian JF - Part B Attn: Part A & B ALJ Dept.
4575 32nd Ave. S., Suite 1
Grand Forks, ND 58201

[redacted]

QIC - C2C B North
301 W Bay Street
Ste. 1110
Jacksonville, FL 32202

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] 52, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List
Attachment A

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
Arlington, VA

| | | | |
|---|---|---|---|
| Appeal of: | INNOVATIVE WOUND HEALING & DERMATOLOGY | OMHA Appeal No.: | 3-14494568214 |
| Beneficiary: | Multiple (See Attachment A) | Medicare Part: | B |
| Medicare No.: | Multiple (See Attachment A) | Before: | Angela Wilt<br>Administrative Law Judge |

## DECISION

After carefully considering the evidence and arguments presented in the record and at hearing, an **UNFAVORABLE** decision is entered against Innovative Wound Healing & Dermatology ("Appellant").

## PROCEDURAL HISTORY

The Appellant submitted a claim to Medicare for **15271** Application of skin substitute graft to trunk, arms, legs, total wound surface area up to 100 square centimeters (sq cm); first 25 sq cm or less wound surface area; **15272** Application of skin substitute graft to trunk, arms, legs, total wound surface area up to 100 sq cm; each additional 25 sq cm wound surface area, or part thereof (List separately in addition to code for primary procedure); **15273** Application of skin substitute graft to trunk, arms, legs, total wound surface area greater than or equal to 100 sq cm; first 100 sq cm wound surface area, or 1% of body area of infants and children; **15274** Application of skin substitute graft to trunk, arms, legs, total wound surface area greater than or equal to 100 sq cm; each additional 100 sq cm wound surface area, or part thereof, or each additional 1% of body area of infants and children, or part thereof (List separately in addition to code for primary procedure); **99344** Home or residence visit for the E/M of a new patient, which requires a medically appropriate history and/or examination and moderate level of medical decision making. When using total time on the date of the encounter for code selection, 60 minutes must be met or exceeded; **Q4227** AmnioCore, per sq cm; **Q4236** carePATCH, per sq cm; **Q4253** Zenith Amniotic Membrane, per sq cm. (File 2, p. 10).

The Medicare Administrative Contractor ("Contractor") allowed payment initially. (*Id.* at 3). However, Qlarant, the Unified Program Integrity Contractor ("UPIC") subsequently determined an overpayment had occurred. (File 10, pp. 13–31; File 11, pp. 81–240). At redetermination, the Contractor upheld the overpayment. (Files 35-73).

Upon reconsideration on November 11, 2024, the Qualified Independent Contractor ("QIC") issued a partially favorable decision in which it denied Medicare payment for all services but for

some E/M services at issue. [1] (File 2). For the services denied, the QIC states for applications codes 15271 to 15274 information of the size, product ID, batch number, and/or expiration date of the graft used were not documented.[2] (*Id.* at 12). In addition, the QIC notes the record lacks documentation of what previous treatments were attempted prior to the decision to use the graft, treatment goals, revised care plan, measures taken to control complicating factors, and reassessment of underling infection, metabolic, nutritional, or vascular problems inhibiting wound healing. (*Id.* at 12–13). It further notes with regards to the medical literature submitted that there was insufficient support from double-blinded, randomized human clinical trials for safety and effectiveness when used as a wound covering to treat the specific condition(s) at issue and as such fails to meet the medically reasonable and necessary requirements set forth in section 1862(a)(1)(A) of the Social Security Act ("Act"). (*Id.* at 13). With regards to the evaluation and management ("E/M") services at issue, the QIC the found the documentation meets the general guidelines of E/M documentation but more accurately reflects an E/M of low complexity and thus allowed payment at the procedure code 99342. (*Id.* at 14).

On December 31, 2024, a request for an Administrative Law Judge (ALJ) Hearing was subsequently filed with the Office of Medicare Hearings and Appeals (OMHA) which satisfied all applicable jurisdictional requirements. (File 1, p. 2); 42 C.F.R. §§ 405.1002 and 405.1006.

Following notification of its intent to submit a position paper in lieu of appearing at the schedule hearing, the Contractor submitted such on February 12, 2025, which was considered by the undersigned. (Files 14, 15).

On February 18, 2025, ALJ Angela Wilt held a telephonic hearing. During the hearing, the Appellant was represented by Adam Snyder, Esq., the appointed representative pursuant to a valid appointment of representative form. (File 1, p. 28). Mr. Snyder appeared, provided argument, and had no objection to the issues or exhibits. Daniel Levy, M.D., and Marilyn Chew also appeared on behalf of the Appellant and were sworn and provided testimony. The administrative filed identified in the Index of Administrative Record and Exhibit List attached to the Notice of Hearing were admitted into evidence without objection and were considered by the undersigned. (Hearing Audio).

Following the hearing, the record was left open for the Appellant, through counsel, to submit additional information. (Hearing Audio). Additional evidence was submitted on February 20, 2025. (Files 19–33). The undersigned finds good cause to admit this new evidence as it is relevant to the issues under consideration, and timely submitted by a beneficiary who is not represented by a supplier or provider. *See* 42 C.F.R. § 405.1018(d).

## ISSUES

1. Whether the services provided by the Appellant to the Beneficiary on the dates of service meet Medicare coverage criteria and are reasonable and necessary in accordance with section 1862(a)(1)(A) of the Act.

[1] In its reconsideration, the QIC found that the E/M services do meet E/M general guidelines. (File 2, p. 14). Specifically, it determined procedure codes 99344 and 99347 for ICN 4724054900055 and 4724054900078 to be fully favorable and procedure code 99344 for ICN 4724054900056 to be partially favorable. (*Id.* at 36–37). The issues before an ALJ include all the issues for the claims or appealed matter specified in the request for hearing that were brought out in the initial determination, redetermination, or reconsideration that were not decided entirely in a party's favor. 42 C.F.R. § 405.1032(a). As such, only the partially favorable 99344 E/M service is properly before the undersigned. *See id.*

[2] In the reconsideration, the QIC relies on LCD L38902 but conceded at the hearing that the LCD was not in effect on the dates of service at issue. (Hearing Audio).

2. If the services are found to be excluded from coverage under section 1862(a)(1)(A) of the Act, whether payment may nevertheless be made to the Appellant under the limitation on liability provisions of section 1879 of the Act.

3. If payment for the services cannot be made, and an overpayment has occurred, whether the recovery of the overpayment may be waived pursuant to section 1870 of the Act.

## APPLICABLE LAW AND POLICY

### *A. Statutes and Regulations*

According to section 1862(a)(1)(A) of the Act, Medicare may not make a payment under Part A or Part B for anything that is not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.

Section 1833(e) of the Act states that "[n]o payment shall be made to any provider of services or another person under this part unless there has been furnished such information as may be necessary to determine the amounts due to such provider or another person under this part for the period with respect to which the amounts are being paid or for any prior period."

Section 1815(a) of the Act states that no such payments shall be made to any provider unless it has furnished such information as the Secretary may request in order to determine the amounts due such provider under this part for the period with respect to which the amounts are being paid or any prior period.

### *B. Policy and Guidance*

Although not subject to the force and effect of law, CMS and its contractors, have issued policy and guidelines containing coverage criteria for selected types of medical services and supplies. Each carrier publishes extensive local policy guidelines, previously called Local Medical Review Policies ("LMRPs") and currently revised as Local Coverage Determinations ("LCDs") and Policy Articles. These guidelines delineate the coverage requirements for a particular service on a carrier-wide basis in accordance with Section 1862(a)(1)(A) of the Act (*i.e.*, a determination as to whether the service is medically reasonable and necessary).

Chapter 16, sections 20 and 80 of the *Medicare Benefit Policy Manual ("MBPM"),* states items and services which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member are not covered, e.g., payment cannot be made for the rental of a special hospital bed to be used by the patient in their home unless it was a reasonable and necessary part of the patient's treatment. A health care item or service for the purpose of causing, or assisting to cause, the death of any individual (assisted suicide) is not covered. This prohibition does not apply to the provision of an item or service for the purpose of alleviating pain or discomfort, even if such use may increase the risk of death, so long as the item or service is not furnished for the specific purpose of causing death.

Chapter 15, section 50.2(K) of the *MBPM,* states that Contractors will make the determination of reasonable and necessary with respect to the medical appropriateness of a drug to treat the patient's condition.

Chapter 3, section 3.6.2.2 of the *Medicare Program Integrity Manual*, states CMS issues national coverage determinations (NCDs) that specify whether certain items, services, procedures or technologies are reasonable and necessary under §1862(a) (1) (A) of the Act. In the absence of an NCD, Medicare contractors are responsible for determining whether services are reasonable and necessary. If no local coverage determination (LCD) exists for a particular item or service, the MACs, CERT, Recovery Auditors, and UPICs shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
    - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
    - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
    - Ordered and furnished by qualified personnel; and,
    - One that meets, but does not exceed, the beneficiary's medical need.

There are several exceptions to the requirement that a service be reasonable and necessary for diagnosis or treatment of illness or injury in order to be considered for payment. The exceptions appear in the full text of §1862(a) (l) (A) of the Act. *See also MPIM*, ch. 13 §§ 5.1 and 7.1.

### *C. National Coverage Determination ("NCD")*

A relevant NCD is binding on the ALJ. 42 C.F.R. § 405.1060(a)(4). There is no applicable NCD in this case.

### *D. Local Coverage Determination ("LCD")*

An ALJ is not strictly bound by LCDs but will consider these policies if they are applicable to a particular case. *See* 42 C.F.R. § 405.1062(a). If an ALJ declines to follow a policy in a particular case, the ALJ decision must explain the reasons why the policy was not followed. *See* 42 C.F.R. § 405.1062(b). An ALJ decision to disregard such policy applies only to the specific claim being considered and does not have precedential effect. *Id.* An ALJ may not set aside or review the validity of an LMRP or LCD for purposes of a claim appeal. *See* 42 C.F.R. § 405.1062(c). An ALJ may review or set aside an LCD as unreasonable only in accordance with the procedures set forth in 42 C.F.R. Part 426. *See* 42 C.F.R. § 405.1062(c). This is no applicable LCD in this case.

### *E. Liability*

If it is determined that Medicare cannot pay for the services at issue, because the services are found to be "not medically reasonable and necessary" under section 1862 (a)(1) of the Act, section 1879 of the Act provides for limitation on liability of payments. Limitation is based upon a party's lack of knowledge of non-coverage. If the beneficiary had no knowledge that the services would not be covered, but the provider of the services did, then the provider is liable and cannot seek or retain payment by the beneficiary. 42 C.F.R. § 411.400 *et seq*. In general, the existence of a notice, manual or community medical standard is sufficient to constitute notice as applicable to the provider. 42 C.F.R. § 411.406.

***F. Overpayment***

Section 1870 of the Act governs the recovery of overpayments. A provider's liability for an overpayment of Medicare benefits may be waived if the provider was not at fault for creating the overpayment. The Medicare Financial Management Manual ("MFMM"), Publication 100-06, Chapter 3, § 90 provides that a provider is without fault if it exercised reasonable care in billing for, and accepting, the payment on the basis of the information available to it, including, but not limited to, the Medicare instructions and regulations, it had a reasonable basis for assuming the payment was correct. As above, a provider is expected to know the rules and procedures of Medicare and cannot be found to be without fault in creating the overpayment. A provider is not without fault when it billed and received payment for services for which it should have known it was not entitled.

## FINDINGS OF FACT AND ANALYSIS

Medicare is a defined benefit program, which means that it does not cover all available medical services and supplies.[3] Instead, Medicare coverage is limited to those medical services and supplies identified by Congress, by the Secretary of Health and Human Services, and by CMS in implementing Congressional directives. For example, Medicare does not cover medical services that are experimental or investigational. The undersigned notes there is no Local or National Coverage Determination for the service at issue.

***Reasonable and Necessary Analysis***

The Centers for Medicare, and Medicaid Services (CMS) has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[4] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used.[5] However, acceptance by individual health care providers, or even a limited group of health care providers normally does not indicate general acceptance in the medical community.[6] Testimonials indicating such limited acceptance, and limited case studies distributed by sponsors with financial interest in the outcome, are not

[3] In general, although MAC decisions have no precedential value, the decisions may serve as a guidepost to disposition of similar cases. 70 Fed. Reg. 11420, 11449 (Mar. 8, 2005). *See also Consultants in Pain Medicine, P.A.* (MAC December 2014); *see also* Medicare Program Integrity Manual, Publication 100-08, Chapter 13, §13.5.4.
[4] *Total Pain Care, PA* (MAC February 2015); *see also, In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[5] *Id. See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.4.
[6] *See* §13.7.1 MPIM.

sufficient evidence of general acceptance by the medical community.[7] The undersigned must consider the broad range of available evidence and evaluate its quality before reaching a conclusion. [8] In addition, the device must be reasonable and necessary for the appellant's condition on the date(s) of service at issue.[9]

In this case, as in all Medicare appeals, the enrollee has the burden to establish that she is entitled to Medicare coverage. Historically, in making coverage determinations, CMS has interpreted the terms reasonable and necessary to require that the item or service in question is safe and effective and not experimental or investigational.[10] CMS has further determined that the relevant tests for applying these terms are whether the service has been proven safe and effective based on authoritative evidence, or, alternatively, whether the service is generally accepted in the medical community as safe and effective for the condition for which it is used. [11]

***FDA Approval/Clearance***

At the outset, the undersigned finds that the coverings at issue are FDA approved. Nevertheless, FDA clearance is not synonymous with Medicare coverage.[12] The regulations state "CMS *may consider* for Medicare coverage" FDA approved devices or services "that have been categorized as non-experimental/investigational."[13] The regulations further clarify that CMS uses FDA categorization *"as a factor"* in making coverage decisions.[14] Thus, under Medicare regulations, the fact that the wound covering may be deemed non-experimental by virtue of its FDA classification means, as a threshold matter, only that it is eligible to be considered for Medicare coverage.[15]

This conclusion is further reinforced by the statements published by CMS and the FDA in the Federal Register explaining the difference between CMS review of a medical device as compared to reviews conducted by the FDA for pre-market approval.[16] Specifically, each process operates under different statutory standards and asks different questions to meet its respective mandates.[17] Moreover, CMS serves a different function by providing health insurance to protect the Nation's aged and disabled. CMS makes determinations regarding the coverage of specific items and services.[18] CMS must decide: "what items and services it can and should pay for; how it should accomplish the payment; and how much to pay."[19] Thus, FDA clearance of an item or service does not preclude CMS or its contractors, in analyzing whether a particular item or service is medically reasonable and necessary, from making an independent inquiry into whether the item or service is safe and effective and not experimental or investigational.[20] Nor

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Total Pain Care, PA* (MAC February 2015).
[11] *Id. See also* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693 states "if no NCD or LCD is in place, contractors may make individual claim determinations, including whether a particular DME meets the statutory requirement of being "reasonable and necessary;" *See also* the Medicare Program Integrity Manual (MPIM), Pub.100-08, Chapter 13, §13.5.4.
[12] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[13] *See* 42 C.F.R. §405.201(a)(2).
[14] *See* 42 C.F.R. §405.201(a)(1).
[15] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[16] *See* 68 Fed. Reg. 55634 (Sept. 26, 2003); *See also* 75 Fed. Ref. 57045.
[17] Id*; See also* MPIM, Publication 100-08, Chapter 13, §5.1.
[18] See Act §1862(a) (1).
[19] *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).
[20] *Id.*

does it preclude CMS or its contractors from inquiring whether the item or service is supported by *"[p]ublished authoritative evidence derived from definitive randomized clinical trials or other definitive studies."*[21]

Although these wound coverings have received FDA approval or clearance, the undersigned finds that such FDA approval/clearance alone does not generally entitle a service to Medicare coverage.

***Peer Review Literature***

In support of coverage for the application of advanced skin subtitles the Appellant submitted medical articles/journals discussing the efficacy of the advanced skin substitutes as they relate to diabetic foot ulcers and venous status ulcers. Based upon a review of all of the articles, the undersigned finds that the medical literature supports the Appellant's position of the advanced skin subtitles at issue in these cases. The undersigned is persuaded in part by the materials submitted for review as it relates to the following advanced skin substitutes at issue. Upon review of the submitted literature the undersigned finds they meet Medicare requirements for being medically reasonable and necessary as set forth in chapter 13, section 13.5.1 of the *MPIM*. However, the undersigned must determine the duration and frequency that is considered appropriate for the service. In reaching this finding, the undersigned relied upon the articles set forth in the record and finds that it supports the weekly application of advanced skin substitutes for up to 12 weeks. Further, the undersigned notes that the participants in these studies had diabetic foot ulcers and venous ulcers that failed to improve after four weeks of standard wound therapy. Thus, in making a determination on each of the claims at issue, the undersigned has the evidence of record and made findings in accordingly.

In addition, although not in effect on the dates of service at issue the undersigned finds Future Effective LCD L39764, with a current future effective date of April 13, 2025, consistent with the articles provided by the Appellant of four-weeks of standard wound therapy. As such, in the absence of Medicare policy or guidelines on skin substitute grafts/cellular and tissue-based products for the treatment of diabetic foot ulcers and venous leg ulcers the undersigned finds the criteria set forth in Future Effective LCD L39764 to be reasonable in the determination of medical necessity for the appeal at hand. Although it notes there were no literature identified for the particular advanced skin substitute identified, the undersigned takes notes of the general acceptance of advanced skin substitutes in wound treatments. Given the appeals ultimate findings and the need for the evidence to support four weeks of standard wound treatment with failure to improve, any misunderstanding of the literature with regards to safety and efficacy can be excused.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

[21] *Consultants in Pain Medicine, P.A.* (December 2014); *In the Case of Vision Quest Industries, Inc.*, (MAC June 2012).

**Beneficiary # 1 – [redacted]**
**Dates of service – [redacted]**
**Disposition – Unfavorable**

*Findings of Fact*

1. The [redacted] encounter note by Johann V. Bernardo, M.D., states the [redacted]-year-old male Beneficiary presented to discuss home health referral to help with sores. The Beneficiary had chronic venous stasis ulcer for which he had been followed by a wound clinic and he reported that it had almost healed but he "lost to follow up" since his last visit on [redacted] (File 25, p. 30). An assessment shows he had chronic venous insufficiency of lower extremity and ulcer of the right lower extremity, limited to breakdown of skin that appeared better. The Beneficiary was referred to home health services. (*Id.* at 32).

2. Order form signed by Dr. Bernardo's office states the Beneficiary was ordered skilled nursing for wound care to the right lower extremity, medication teaching, and skilled nursing assessments. The Beneficiary's venous stasis wound was to be cleaned, dried, and covered with dressing twice weekly. (File 25, p. 34).

3. On [redacted] the Beneficiary was referred to Appellant's facility by Dr. Bernardo for wound to the right lateral lower leg measuring 4.2 x 3 x 0.1 cm. The length of the wound was noted to be on or before [redacted] The Beneficiary's diagnosis was non-pressure chronic ulcer of other part of right lower leg limited to breakdown of skin. Comorbidities possibly affecting the wound healing were stated to be diabetes and venous insufficiency. (File 11, p. 1367).

4. Clinical note dated [redacted] and electronically signed by Tory Foss, PA-C, on [redacted] notes the Beneficiary presented for right lateral leg – distal pressure ulcer with chronic bleeding and pain to the right lower extremity. An examination shows the wound to be a stage 4 chronic non-pressure ulcer measuring 4.0 x 4.0 x 0.3 cm with superficially denuded patches of subcutaneous tissue and pink wound bed. (File 25, p. 20). The Beneficiary's wound was cleansed and irrigated with sterile saline, debrided, application of antimicrobial gel was applied, followed by an application of Amniocore graft. (*Id.* a 20–21). The Beneficiary's plan of care was to follow up in one week in addition to keeping the bandage clean and dry, doing daily inspection of the area, and watching for signs of infection. (*Id.* at 21–22).

5. An application of tissue cultured allogenic skin or dermal substitute signed electronically the same day notes the Beneficiary had a diagnosis of chronic ulcer of skin to the distal right lateral lower leg with a preoperative dimension of 4.0 x 4.0 cm. Amniocore and Puracyn antimicrobial wound gel or similar product was utilized in the wound's treatment. (File 25, p. 12).

6. Tory Foss, PA, signed an attestation statement on September 11, 2024, stating the practitioner summary dated [redacted] was authored by him and accurately reflects signatures/notations made in his capacity in treating the Beneficiary. (File 25, p. 9).

*Analysis*

The record does not support that the service provided by the Appellant to the Beneficiary meet Medicare coverage criteria. *See* Act § 1862(a)(1)(A). Medicare provides coverage for items and

services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. *See id*. Payment is excluded if the medical necessity for the service cannot be substantiated; the services was not billed in compliance with the coding, payment, or billing requirements or was not provided to a beneficiary as billed. *MPIM*, ch. 3, § 3.6.2.5.

In this, the QIC cited to LCD L38902 in its denial. (File 2). A review however shows the LCD was not in effect in the jurisdiction in which the services were provided.[22] Ms. Chew noted the state of Washington where the services occurred is located in the Contractor's jurisdiction F. (Hearing Audio). She and counsel did not identify an applicable LCD in the Contractor's jurisdiction F nor is the undersigned aware of one.[23] (*Id.*). In the absence of an NCD or LCD, Medicare contractors may make individual claim determinations, including whether the item or service meets the statutory requirement of being "reasonable and necessary." *See* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693/ *MPIM*, ch. 13 § 13.5.4.

The undersigned as such must now complete a medical reasonable analysis as to each of the claims at issue and the use of advanced skin substitutes and whether they were safe and effective; whether they are experimental or investigational; and whether they are appropriate based on "the available evidence of general acceptance by the medical community, including peer-reviewed literature, evidence-based consensus statements, and clinical guidelines. *MPIM*, ch. 3, § 3.6.2.2, ch. 13, §§ 13.5.3, 13.5.4.

As noted in the discussion peer reviewed literature above, that advanced skin substitutes at issue are safe and effective for the treatment of patients with venous status ulcers and diabetic foot ulcers. However, the undersigned finds that in addition to determining that there is sufficient evidence to find that these skin substitutes are safe and effective, the record must establish that the use of advanced skin substitutes is implemented after the wound failed to improve after four weeks of standard wound therapy; a treatment plan is implemented including debridement and compression therapy; and not to exceed 12 weeks of weekly applications of advanced skin substitute.

The QIC's erroneous application of LCD L38902 does not however change the outcome. Notably there is an absence of documentation in the record showing the Beneficiary engaged in four-weeks of standard wound therapy prior to the start of advance therapy with skin substitute. (Files 11, 25). Specifically, the record lacks evidence of the types of treatment utilized and measurements and characteristics of the wound. (*Id.*) Dr. Levy's testimony that many of his patients receive care elsewhere prior to seeking treatment from him does not negate the Appellant's burden outlined in section 1833(e) of the Act. (Hearing Audio). Had the record included documentation of four weeks of standard wound therapy, albeit from a different provider, home health, or even skilled nursing facility, the outcome of the appeal may have been different.

While the Appellant argued the patient summaries included overcomes much of this, the undersigned finds it to be insufficient due to invalid authentication. Chapter 3, section 3.3.2.4 of

[22] https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=38902 [last visited March 26, 2025] shows the LCD is only applicable in jurisdiction J – E which includes California – Entire State; California – Northern; California – Southern; American Samoa; Guam; Hawaii; Northern Mariana Islands; Nevada.

[23] FUTURE EFFECTIVE LCD L39764: Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers (LCD L39764) (April 13, 2025) is set to go in effect in April 2025.

the *MPIM* in effect on the dates of service at issue states "[f] medical review purposes, Medicare requires that services provided/ordered/certified be authenticated by the persons responsible for the care of the beneficiary in accordance with Medicare's policies…Providers should not add late signatures to the medical record, (beyond the short delay that occurs during the transcription process) but instead should make use of the signature authentication process." As the QIC correctly summarized in its reconsideration the patient summaries do not contain the date the summary was written, the date the summary was signed, or contain a valid signature by the author of the summary. The undersigned concurs with the QIC's conclusion in that while the Appellant submitted an attestation statement which states the signature was theirs, the patient summary is not an addendum to the medical record and the information contained in the patient summary is not reflected in the medical records. For this reason, the patient summaries cannot be considered in the medical necessity determination.

Although the undersigned is sympathetic to the Appellant's situation, an ALJ lacks the authority to allow Medicare payment for claims that are not reasonable and necessary in accordance with Medicare criteria. As such, the claim is not payable under Medicare.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

**Beneficiary # 2 –** [redacted]
**Dates of service –** [redacted]

**Disposition – Unfavorable**

*Findings of Fact*

1. The 68-year-old male Beneficiary presented for an annual visit in addition to an assessment for diabetes, hyperlipidemia, and hypertension on [redacted] with Erin R. Marckel, PA-C. (File 28, p. 33). It notes he had recurrent right leg wound/cellulitis and a 3+ non-pitting edema in the legs. (*Id.* at 37). He was to return in three months for a diabetes follow-up. (*Id.* at 38).

2. The [redacted] encounter with Ms. Marckel states the Beneficiary was seen for a hospital follow-up of cellulitis of the right leg. It notes he had a wound care specialist who evaluated him regularly and put on four layers of dressing. (File 28, p. 30). The assessment notes overall, the Beneficiary was somewhat improved, and he was to continue with home health and infectious disease. No follow-ups were ordered. (*Id.* at 31).

3. The Beneficiary's wound measured 33 x 12 cm on [redacted] (File 28, p. 172).

4. Encounter noted dated [redacted] by Ms. Marckel notes the Beneficiary was being managed by Innovative Wound Care but now presented for referral to infectious disease for wound. (File 28, p. 27). The referral to infectious disease notes he was to continue wound care management and to follow-up as needed. (*Id.*at 28).

5. The Beneficiary was seen on [redacted] for follow-up of chronic non-pressure ulcer of the calf extending to fat level of the right lower leg. The Beneficiary was to have a second round of maggot removal/continued biologic sheet application. The stage 4 chronic necrotic wound measured 34 x 12 x 0.3 cm and had red and brown wound bed, copious exudate, neurotic odor, and pink rolled wound edge. (File 28, p. 17). The wound was debrided, and 96 units of Zenith graft were applied followed by dressing. (*Id.* at 17–18).

6. Debridement note from [redacted] states the Beneficiary underwent debridement with the maggots disposed of and Amniocore and Puracyn antimicrobial wound gel or similar produced utilized. (File 28, p. 13).

7. Encounter dated [redacted] states the Beneficiary was seen for a follow-up of chronic non-pressure ulcer of calf extending to the fat level. An evaluation notes he had superficially denuded patches of subcutaneous tissue involving the right lower leg with a small circular 1 mm holes which were bored by maggots. There was a small amount of improvement in granulation in the site where prior tissue graft was placed. The Beneficiary had minimal clinical improvement but required additional care to achieve his therapeutic goals. The wound measured 34 x 12 x 0.5 cm. (File 28, p. 51). The wound was debrided and Amnicore was applied followed by dress. (*Id.* at 48, 52).

8. The Beneficiary's [redacted] preoperative measurement of the chronic non-pressure ulcer of calf extending to fat level to the right lower leg (2) was 34.0 x 12. X 0.2 cm. CarePATCH was applied to the wound following the procedure. (File 28, p. 65).

9. Clinical note dated [redacted] states the Beneficiary presented with chronic non-pressure ulcer of the calf extending to the fat level of the right lower leg. The wound measured 34 x 12 x 0.2 cm with superficially denuded patches of subcutaneous tissue. The stage 4 non-pressure ulcer of the left dorsal foot measured 5 x 3 cm. There was minimal improvement. (File 28, p 78). The Beneficiary underwent debridement followed by an application of antimicrobial gel and carePATCH graft to the open wound site. (*Id.* at 77, 79).

10. An examination on [redacted] shows the Beneficiary's wound measured 34 x 12 x 0.2 cm. It had superficially denuded patches of subcutaneous tissue and/or dermis, involving the right lower leg, minimal serous drainage, and full thickness. (File 28, p. 102). The wound was debrided and Amniograft graft to the open wound site. (*Id.* at 102–103).

11. The Beneficiary underwent mechanical debridement of the non-pressure ulcer on the right calf on [redacted] Afterwards Amnicore graft was applied to the open wound. (File 28, pp. 92, 95).

12. The Beneficiary's preoperative wound measured 34 x 12 x 0.1 cm on [redacted] 176 units of Amnicore was applied following a mechanical debridement. (File 28, pp. 125, 128–129).

13. The [redacted] encounter states the Beneficiary was last seen on [redacted] and was now seen for a chronic stage 4 non-pressure ulcer of the calf to fat level follow-up. The wound measured 34 x 12 x 0.2 cm and the superficially denuded patches of subcutaneous tissue and/r dermis involving the right anterior lower leg – central was present. (File 28, p. 141). Following a debridement, the Beneficiary' s wound measure 34 x 12 x 0.1 cm. (*Id.* at 141–142). Amniocore graft was applied following the debridement. (*Id.* at 142).

14. Amnicore was applied to the Beneficiary's wound following a debridement on [redacted] (File 28, pp. 159, 162–163). The wound measured 34 x 12 x 0.1 cm and had full thickness. (*Id.* at 162).

15. The [redacted] encounter states the interval change of the Beneficiary's condition improved. It notes the Beneficiary had superficially +/- ulceration to the mid dermis with early granulation tissue, serosanguinous drainage +/- and surrounding erythema. The now stage 3 ulcer had a vertical span of 12 cm and diagonal span of 15 cm in thickness to the right lower leg wit less malodorous drainage and granulation tissue present. There was less redness and swelling around the wound. (File 28, p. 176). The wound was debrided, and Zenith grade was applied to the open wound. (*Id.* at 177).

16. Alison M. Stinnett, PA, signed attestation statements on September 11, 2024, stating the practitioner summaries dated [redacted], and [redacted] were authored by her and accurately reflect signatures/notations made in her capacity in treating the Beneficiary. (File 28, pp. 9, 45, 61, 74, 89, 111, 122, 138, 156, 171).

*Analysis*

The record does not support that the service provided by the Appellant to the Beneficiary meet Medicare coverage criteria. *See* Act § 1862(a)(1)(A). Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. *See id*. Payment is excluded if the medical

necessity for the service cannot be substantiated; the services was not billed in compliance with the coding, payment, or billing requirements or was not provided to a beneficiary as billed. *MPIM,* ch. 3, § 3.6.2.5.

In this, the QIC cited to LCD L38902 in its denial. (File 2). A review however shows the LCD was not in effect in the jurisdiction in which the services were provided.[24] Ms. Chew noted the state of Washington where the services occurred is located in the Contractor's jurisdiction F. (Hearing Audio). She and counsel did not identify an applicable LCD in the Contractor's jurisdiction F nor is the undersigned aware of one.[25] (*Id.*). In the absence of an NCD or LCD, Medicare contractors may make individual claim determinations, including whether the item or service meets the statutory requirement of being "reasonable and necessary." *See* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693/ *MPIM,* ch. 13 § 13.5.4.

The undersigned as such must now complete a medical reasonable analysis as to each of the claims at issue and the use of advanced skin substitutes and whether they were safe and effective; whether they are experimental or investigational; and whether they are appropriate based on "the available evidence of general acceptance by the medical community, including peer-reviewed literature, evidence-based consensus statements, and clinical guidelines. *MPIM,* ch. 3, § 3.6.2.2, ch. 13, §§ 13.5.3, 13.5.4.

As noted in the discussion peer reviewed literature above, that advanced skin substitutes at issue are safe and effective for the treatment of patients with venous status ulcers and diabetic foot ulcers. However, the undersigned finds that in addition to determining that there is sufficient evidence to find that these skin substitutes are safe and effective, the record must establish that the use of advanced skin substitutes is implemented after the wound failed to improve after four weeks of standard wound therapy; a treatment plan is implemented including debridement and compression therapy; and not to exceed 12 weeks of weekly applications of advanced skin substitute.

The QIC's erroneous application of LCD L38902 does not however change the outcome. Notably there is an absence of documentation in the record showing the Beneficiary engaged in four-weeks of standard wound therapy prior to the start of advance therapy with skin substitute. (File 28). Specifically, the record lacks evidence of the types of treatment utilized and measurements and characteristics of the wound. (*Id.*) Dr. Levy's testimony that many of his patients receive care elsewhere prior to seeking treatment from him does not negate the Appellant's burden outlined in section 1833(e) of the Act. (Hearing Audio). Had the record included documentation of four weeks of standard wound therapy, albeit from a different provider, home health, or even skilled nursing facility, the outcome of the appeal may have been different.

While the Appellant argued the patient summaries included overcomes much of this, the undersigned finds it to be insufficient due to invalid authentication. Chapter 3, section 3.3.2.4 of the *MPIM* in effect on the dates of service at issue states "[f] medical review purposes, Medicare requires that services provided/ordered/certified be authenticated by the persons responsible for

---

[24] https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=38902 [last visited March 26, 2025] shows the LCD is only applicable in jurisdiction J – E which includes California – Entire State; California – Northern; California – Southern; American Samoa; Guam; Hawaii; Northern Mariana Islands; Nevada.

[25] FUTURE EFFECTIVE LCD L39764: Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers (LCD L39764) (April 13, 2025) is set to go in effect in April 2025.

the care of the beneficiary in accordance with Medicare's policies…Providers should not add late signatures to the medical record, (beyond the short delay that occurs during the transcription process) but instead should make use of the signature authentication process." As the QIC correctly summarized in its reconsideration the patient summaries do not contain the date the summary was written, the date the summary was signed, or contain a valid signature by the author of the summary. The undersigned concurs with the QIC's conclusion in that while the Appellant submitted an attestation statement which states the signature was theirs, the patient summary is not an addendum to the medical record and the information contained in the patient summary is not reflected in the medical records. For this reason, the patient summaries cannot be considered in the medical necessity determination.

Although the undersigned is sympathetic to the Appellant's situation, an ALJ lacks the authority to allow Medicare payment for claims that are not reasonable and necessary in accordance with Medicare criteria. As such, the claim is not payable under Medicare.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

**Beneficiary # 3 –** [redacted]
**Dates of service –** [redacted]

**Disposition – Unfavorable**

*Findings of Fact*

1. The 57-year-old male Beneficiary was referred to the Appellant's facility on [redacted] by Nicole Brucker for right ankle and right medial anterior foot wound measuring 0.9 x 6 x 0.2 cm that was present for greater than one year. The Beneficiary's diagnosis was non-pressure chronic ulcer of other part of right foot with fat layer exposed. (File 31, p. 22).

2. Encounter note dated [redacted] notes the Beneficiary was seen for a non-pressure ulcer to the distal right medial lower leg. An examination notes he had superficially denuded patches of subcutaneous tissues and/or dermis. (File 31, pp. 16). The Beneficiary underwent debridement and 16 units of carePATCh was applied. (*Id.* at 13, 16).

3. On [redacted] the Beneficiary again received 16 units of carePATCH to the medial right ankle following a mechanical debridement for the chronic skin ulcer. (File 31, pp. 33, 38). The wounds measured at the right medial malleolus 2 x 2cm; right medial foot 1 x 1 cm; and right great toe 0.6 x 0.6 cm. There was full thickness and moderate drainage. (*Id.* at 38).

4. On [redacted] the Beneficiary underwent debridement followed by an application of carePATCH. The wound measured at the right medial malleolus 2 x 2cm; right medial foot 1 x 1 cm; and right great toe 0.6 x 0.6 cm. There was full thickness and moderate drainage. (File 31, p. 38). The encounter note was signed by Dr. Levy. (*Id.* at 55).

5. The clinical encounter dated [redacted] reports the Beneficiary was seen for wounds to the right medial lower leg – distal and right medial foot – central and right great toe – planter. An evaluation shows the wounds were healing well with no signs of infection and moderate inflammation. (File 31, p. 88). The wounds measured at the right medial malleolus 2 x 2 cm; right medial foot 1 x 1 cm; and right great toe 1 x 1 cm. There was full thickness and moderate drainage. (*Id.* at 38).

6. The [redacted] clinical follow-up notes the Beneficiary's pressure ulcer of the right lower leg had superficial denuded patches of subcutaneous tissue and/or dermis. The wounds were mechanically debrided after which Aminocore graft was applied to the open wound sites. (File 31, p. 87).

7. The Beneficiary was seen on [redacted] for right ankle – medial, right great toe – plantar and right medial foot - central with the clinical note stating the interval change of the complaint in the Beneficiary's condition improved and the severity was rated as mild to moderate. Superficially denuded patches of subcutaneous tissue and/or dermis involving the right lower leg was present in the three areas. The wound was mechanically debrided and Amnicore tissue was applied to the wounds. (File 31, p. 104). The wounds measured at the right medial malleolus 2 x 1 cm; right medial foot 1 x 1 cm; and right great toe 1 x 1 cm. There was full thickness and moderate drainage. (*Id.* at 105).

8. Clinical note dated [redacted] states the Beneficiary's underwent debridement of the wounds followed by Amniocore tissue being applied to the open wound sites. (File 31 p.

118). The wounds measured at the right medial malleolus 2 x 1 cm; right medial foot 1 x 1 cm; and right great toe 1 x 1 cm. There was full thickness and moderate drainage. (*Id.* at 118–119).

9. An evaluation performed on [redacted] shows the Beneficiary's stage 3 wound measured at the right medial ankle 2 x 1 cm; (new wound) right medial ankle 1 x 0.7 cm; and right great toe 1 x 1 cm. (File 21, p. 138). The wounds were debrided and Puracyn antimicrobial wound gel was applied to the right ankle – medial. (*Id.* at 133–135, 139).

10. Tory Floss, PA, signed attestation statements on September 11, 2024, stating the practitioner summaries dated [redacted] [redacted] were authored by her and accurately reflected signatures/notations made in her capacity in treating the Beneficiary. (File 31, pp. 9, 29).

11. Similar attestation statements were signed by Dr. Levy on the same day stating practitioner summaries dated [redacted], and [redacted] were authored by him and accurately reflected signatures/notations made in her capacity in treating the Beneficiary. (File 31, pp. 48, 65, 83, 98, 114, 130).

*Analysis*

The record does not support that the service provided by the Appellant to the Beneficiary meet Medicare coverage criteria. *See* Act § 1862(a)(1)(A). Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. *See id.* Payment is excluded if the medical necessity for the service cannot be substantiated; the services was not billed in compliance with the coding, payment, or billing requirements or was not provided to a beneficiary as billed. *MPIM*, ch. 3, § 3.6.2.5.

In this, the QIC cited to LCD L38902 in its denial. (File 2). A review however shows the LCD was not in effect in the jurisdiction in which the services were provided.[26] Ms. Chew noted the state of Washington where the services occurred is located in the Contractor's jurisdiction F. (Hearing Audio). She and counsel did not identify an applicable LCD in the Contractor's jurisdiction F nor is the undersigned aware of one.[27] (*Id.*). In the absence of an NCD or LCD, Medicare contractors may make individual claim determinations, including whether the item or service meets the statutory requirement of being "reasonable and necessary." *See* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693/ *MPIM*, ch. 13 § 13.5.4.

The undersigned as such must now complete a medical reasonable analysis as to each of the claims at issue and the use of advanced skin substitutes and whether they were safe and effective; whether they are experimental or investigational; and whether they are appropriate based on "the available evidence of general acceptance by the medical community, including peer-reviewed literature, evidence-based consensus statements, and clinical guidelines. *MPIM*, ch. 3, § 3.6.2.2, ch. 13, §§ 13.5.3, 13.5.4.

[26] https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=38902 [last visited March 26, 2025] shows the LCD is only applicable in jurisdiction J – E which includes California – Entire State; California – Northern; California – Southern; American Samoa; Guam; Hawaii; Northern Mariana Islands; Nevada.

[27] FUTURE EFFECTIVE LCD L39764: Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers (LCD L39764) (April 13, 2025) is set to go in effect in April 2025.

As noted in the discussion peer reviewed literature above, that advanced skin substitutes at issue are safe and effective for the treatment of patients with venous status ulcers and diabetic foot ulcers. However, the undersigned finds that in addition to determining that there is sufficient evidence to find that these skin substitutes are safe and effective, the record must establish that the use of advanced skin substitutes is implemented after the wound failed to improve after four weeks of standard wound therapy; a treatment plan is implemented including debridement and compression therapy; and not to exceed 12 weeks of weekly applications of advanced skin substitute.

The QIC's erroneous application of LCD L38902 does not however change the outcome. Notably there is an absence of documentation in the record showing the Beneficiary engaged in four-weeks of standard wound therapy prior to the start of advance therapy with skin substitute. (Files 11; 31). Specifically, the record lacks evidence of the types of treatment utilized and measurements and characteristics of the wound. (*Id.*) Dr. Levy's testimony that many of his patients receive care elsewhere prior to seeking treatment from him does not negate the Appellant's burden outlined in section 1833(e) of the Act. (Hearing Audio). Had the record included documentation of four weeks of standard wound therapy, albeit from a different provider, home health, or even skilled nursing facility, the outcome of the appeal may have been different.

While the Appellant argued the patient summaries included overcomes much of this, the undersigned finds it to be insufficient due to invalid authentication. Chapter 3, section 3.3.2.4 of the *MPIM* in effect on the dates of service at issue states "[f] medical review purposes, Medicare requires that services provided/ordered/certified be authenticated by the persons responsible for the care of the beneficiary in accordance with Medicare's policies…Providers should not add late signatures to the medical record, (beyond the short delay that occurs during the transcription process) but instead should make use of the signature authentication process." As the QIC correctly summarized in its reconsideration the patient summaries do not contain the date the summary was written, the date the summary was signed, or contain a valid signature by the author of the summary. The undersigned concurs with the QIC's conclusion in that while the Appellant submitted an attestation statement which states the signature was theirs, the patient summary is not an addendum to the medical record and the information contained in the patient summary is not reflected in the medical records. For this reason, the patient summaries cannot be considered in the medical necessity determination.

Although the undersigned is sympathetic to the Appellant's situation, an ALJ lacks the authority to allow Medicare payment for claims that are not reasonable and necessary in accordance with Medicare criteria. As such, the claim is not payable under Medicare.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

**Beneficiary # 4 – [redacted]**
**Dates of service – [redacted]**
**Disposition – Unfavorable**

*Findings of Fact*

1. Progress note by Lubna Khan, M.D., dated [redacted] states the Beneficiary presented with wound(s) to the left anterior lower leg with red granulation tissue that was greater than one year old. It notes the previously closed wound reopened six months ago and developed in the context of prolonged sitting. (File 11, p. 1244). The Beneficiary had diagnoses of venous ulcer of left leg, non-pressure chronic ulcer of unspecified part of left lower leg with unspecified severity, stage 3 chronic kidney disease, stage 3 hypertensive kidney disease, frailty syndrome in geriatric patient, generalized muscle weakness, muscle wasting and atrophy, basal cell carcinoma of skin, and encounter for general adult medical examination with abnormal findings. (*Id.* at 1246). The Beneficiary's non-pressure chronic ulcer of unspecified part of left lower leg with unspecified severity was cleansed and bandaged and was referred to wound care. (*Id.* at 1247).

2. Clinical encounter note dated [redacted] states the 100-year-old female non-diabetic Beneficiary had venous insufficiency. Her medical history was significant for a similar biologic tissue treatment for chronic ulcer she sustained after a minor injury to the leg that worked well and was completed healed. A new minor injury occurred approximately one to two months prior that was not readily healing and now presented to restart therapy. Alison Stinnett, PA-C, notes the Beneficiary's wound measured 4 x 4 cm and had superficially denuded patches of subcutaneous tissue involving the left anterior lower leg – central. It was chronic stage 3 non-pressure ulcer that was well healing. (File 33, p. 14). The wound was debrided and Amnicore was applied to the Beneficiary's left anterior lower leg – central on [redacted] for a diagnosis of chronic ulcer of skin of lower leg. (*Id.* at 12, 15).

3. Alison M. Stinnett, PA, signed am attestation statement on September 11, 2023, stating the practitioner summary dated [redacted] was authored by her and accurately reflected signatures/notations made in her capacity in treating the Beneficiary. (File 33, p. 9).

*Analysis*

The record does not support that the service provided by the Appellant to the Beneficiary meet Medicare coverage criteria. *See* Act § 1862(a)(1)(A). Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. *See id*. Payment is excluded if the medical necessity for the service cannot be substantiated; the services was not billed in compliance with the coding, payment, or billing requirements or was not provided to a beneficiary as billed. *MPIM*, ch. 3, § 3.6.2.5.

In this, the QIC cited to LCD L38902 in its denial. (File 2). A review however shows the LCD was not in effect in the jurisdiction in which the services were provided.[28] Ms. Chew noted the state of Washington where the services occurred is located in the Contractor's jurisdiction F. (Hearing Audio). She and counsel did not identify an applicable LCD in the Contractor's

[28] https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=38902 [last visited March 26, 2025] shows the LCD is only applicable in jurisdiction J – E which includes California – Entire State; California – Northern; California – Southern; American Samoa; Guam; Hawaii; Northern Mariana Islands; Nevada.

jurisdiction F nor is the undersigned aware of one.[29] (*Id.*). In the absence of an NCD or LCD, Medicare contractors may make individual claim determinations, including whether the item or service meets the statutory requirement of being "reasonable and necessary." *See* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693/ *MPIM*, ch. 13 § 13.5.4.

The undersigned as such must now complete a medical reasonable analysis as to each of the claims at issue and the use of advanced skin substitutes and whether they were safe and effective; whether they are experimental or investigational; and whether they are appropriate based on "the available evidence of general acceptance by the medical community, including peer-reviewed literature, evidence-based consensus statements, and clinical guidelines. *MPIM*, ch. 3, § 3.6.2.2, ch. 13, §§ 13.5.3, 13.5.4.

As noted in the discussion peer reviewed literature above, that advanced skin substitutes at issue are safe and effective for the treatment of patients with venous status ulcers and diabetic foot ulcers. However, the undersigned finds that in addition to determining that there is sufficient evidence to find that these skin substitutes are safe and effective, the record must establish that the use of advanced skin substitutes is implemented after the wound failed to improve after four weeks of standard wound therapy; a treatment plan is implemented including debridement and compression therapy; and not to exceed 12 weeks of weekly applications of advanced skin substitute.

The QIC's erroneous application of LCD L38902 does not however change the outcome. Notably there is an absence of documentation in the record showing the Beneficiary engaged in four-weeks of standard wound therapy prior to the start of advance therapy with skin substitute. (Files 11, 33). Specifically, the record lacks evidence of the types of treatment utilized and measurements and characteristics of the wound. (*Id.*) Dr. Levy's testimony that many of his patients receive care elsewhere prior to seeking treatment from him does not negate the Appellant's burden outlined in section 1833(e) of the Act. (Hearing Audio). Had the record included documentation of four weeks of standard wound therapy, albeit from a different provider, home health, or even skilled nursing facility, the outcome of the appeal may have been different.

While the Appellant argued the patient summaries included overcomes much of this, the undersigned finds it to be insufficient due to invalid authentication. Chapter 3, section 3.3.2.4 of the *MPIM* in effect on the dates of service at issue states "[f] medical review purposes, Medicare requires that services provided/ordered/certified be authenticated by the persons responsible for the care of the beneficiary in accordance with Medicare's policies…Providers should not add late signatures to the medical record, (beyond the short delay that occurs during the transcription process) but instead should make use of the signature authentication process." As the QIC correctly summarized in its reconsideration the patient summaries do not contain the date the summary was written, the date the summary was signed, or contain a valid signature by the author of the summary. The undersigned concurs with the QIC's conclusion in that while the Appellant submitted an attestation statement which states the signature was theirs, the patient summary is not an addendum to the medical record and the information contained in the patient summary is not reflected in the medical records. For this reason, the patient summaries cannot be considered in the medical necessity determination.

[29] FUTURE EFFECTIVE LCD L39764: Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers (LCD L39764) (April 13, 2025) is set to go in effect in April 2025.

Although the undersigned is sympathetic to the Appellant's situation, an ALJ lacks the authority to allow Medicare payment for claims that are not reasonable and necessary in accordance with Medicare criteria. As such, the claim is not payable under Medicare. In addition, the undersigned notes the record for the date of service at issue does not reflect complex or moderate complexity and was thus finds the E/M service at issue was properly down coded by the QIC. (File 2, p. 14).

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

**Beneficiary # 5 – [redacted]**
**Dates of service – [redacted]**
**Disposition – Unfavorable**

*Findings of Fact*

1. The 79-year-old male Beneficiary was referred to the Appellant's facility by Erik Willis on February 2, 2023, for treatment of a right lateral foot measuring 1.1 x 1.0 x. 0.2 cm and greater than two years. The Beneficiary had a diagnosis of non-pressure chronic ulcer of right heel and midfoot limited to breakdown of skin. (File 27, p. 18).

2. The Beneficiary presented to the Appellant's clinic on [redacted] for right lateral foot with an onset of two years. The Beneficiary was also seen for rash to the left plantar foot – central with tenderness, pruritus of skin, sensation of burning of skin, and itching of skin with an onset of three months. The severity was rated to be moderate to severe. An examination notes the Beneficiary had a chronic pressure ulcer to the right lateral foot measuring 2.0 x 2.0 x 0.3 cm superficially denuded patches of subcutaneous tissue. (File 27, p. 12). The Beneficiary underwent a surgical debridement followed by an application of Amniocore graft to the open wound site. (*Id.* at 12–13). A topical ointment was applied to the dyshidrotic foot eczema on the left planter foot – medial. (*Id.* at 13).

3. The [redacted] encounter note states the Beneficiary had recently hospitalized for sepsis. The Beneficiary's stage 4 chronic pressure ulcer to the right lateral foot measured 1.0 x 1.0 x. 0.2 cm and had an erythematous wound bed with pink rolled edges and purulent bloody drainage post debridement. (File 27, p. 28). Amnicore graft was applied to the open wound site. (*Id.* at 29).

4. Alison M. Stinnett, PA, signed attestation statements on September 11, 2024, stating the practitioner summaries dated [redacted] and [redacted] were authored by her and accurately reflected signatures/notations made in her capacity in treating the Beneficiary. (File 27, pp. 9, 25).

*Analysis*

The record does not support that the service provided by the Appellant to the Beneficiary meet Medicare coverage criteria. *See* Act § 1862(a)(1)(A). Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. *See id*. Payment is excluded if the medical necessity for the service cannot be substantiated; the services was not billed in compliance with the coding, payment, or billing requirements or was not provided to a beneficiary as billed. *MPIM*, ch. 3, § 3.6.2.5.

In this, the QIC cited to LCD L38902 in its denial. (File 2). A review however shows the LCD was not in effect in the jurisdiction in which the services were provided.[30] Ms. Chew noted the state of Washington where the services occurred is located in the Contractor's jurisdiction F. (Hearing Audio). She and counsel did not identify an applicable LCD in the Contractor's

[30] https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=38902 [last visited March 26, 2025] shows the LCD is only applicable in jurisdiction J – E which includes California – Entire State; California – Northern; California – Southern; American Samoa; Guam; Hawaii; Northern Mariana Islands; Nevada.

jurisdiction F nor is the undersigned aware of one.[31] (*Id.*). In the absence of an NCD or LCD, Medicare contractors may make individual claim determinations, including whether the item or service meets the statutory requirement of being "reasonable and necessary." *See* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693/ *MPIM*, ch. 13 § 13.5.4.

The undersigned as such must now complete a medical reasonable analysis as to each of the claims at issue and the use of advanced skin substitutes and whether they were safe and effective; whether they are experimental or investigational; and whether they are appropriate based on "the available evidence of general acceptance by the medical community, including peer-reviewed literature, evidence-based consensus statements, and clinical guidelines. *MPIM*, ch. 3, § 3.6.2.2, ch. 13, §§ 13.5.3, 13.5.4.

As noted in the discussion peer reviewed literature above, that advanced skin substitutes at issue are safe and effective for the treatment of patients with venous status ulcers and diabetic foot ulcers. However, the undersigned finds that in addition to determining that there is sufficient evidence to find that these skin substitutes are safe and effective, the record must establish that the use of advanced skin substitutes is implemented after the wound failed to improve after four weeks of standard wound therapy; a treatment plan is implemented including debridement and compression therapy; and not to exceed 12 weeks of weekly applications of advanced skin substitute.

The QIC's erroneous application of LCD L38902 does not however change the outcome. Notably there is an absence of documentation in the record showing the Beneficiary engaged in four-weeks of standard wound therapy prior to the start of advance therapy with skin substitute. (Files 11, 27). Specifically, the record lacks evidence of the types of treatment utilized and measurements and characteristics of the wound. (*Id.*) Dr. Levy's testimony that many of his patients receive care elsewhere prior to seeking treatment from him does not negate the Appellant's burden outlined in section 1833(e) of the Act. (Hearing Audio). Had the record included documentation of four weeks of standard wound therapy, albeit from a different provider, home health, or even skilled nursing facility, the outcome of the appeal may have been different.

While the Appellant argued the patient summaries included overcomes much of this, the undersigned finds it to be insufficient due to invalid authentication. Chapter 3, section 3.3.2.4 of the *MPIM* in effect on the dates of service at issue states "[f] medical review purposes, Medicare requires that services provided/ordered/certified be authenticated by the persons responsible for the care of the beneficiary in accordance with Medicare's policies…Providers should not add late signatures to the medical record, (beyond the short delay that occurs during the transcription process) but instead should make use of the signature authentication process." As the QIC correctly summarized in its reconsideration the patient summaries do not contain the date the summary was written, the date the summary was signed, or contain a valid signature by the author of the summary. The undersigned concurs with the QIC's conclusion in that while the Appellant submitted an attestation statement which states the signature was theirs, the patient summary is not an addendum to the medical record and the information contained in the patient summary is not reflected in the medical records. For this reason, the patient summaries cannot be considered in the medical necessity determination.

[31] FUTURE EFFECTIVE LCD L39764: Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers (LCD L39764) (April 13, 2025) is set to go in effect in April 2025.

Although the undersigned is sympathetic to the Appellant's situation, an ALJ lacks the authority to allow Medicare payment for claims that are not reasonable and necessary in accordance with Medicare criteria. As such, the claim is not payable under Medicare.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

**Beneficiary # 6 –** [redacted]
**Dates of service –** [redacted]
**Disposition – Unfavorable**

*Findings of Fact*

1. The Beneficiary was referred to the Appellant's facility by Mohsin Ikram, ARNP, on [redacted] for a two-month-old wound measuring 1.4 x 1.4 x 0.4 cm. The Beneficiary had a diagnosis of unstageable pressure ulcer of right hip. Dr. Ikram notes the Beneficiary started home health on [redacted] (File 11, pp. 1296, 1349).

2. Encounter dated [redacted] states the Beneficiary was seen for a chronic pressure ulcer to the right trochanteric hip. There was superficially denuded patches of subcutaneous tissue and/or dermis. (File 24, p. 12). The Beneficiary underwent a mechanical debridement of the stage 3 full thickness wound with moderate drainage. Following the debridement, the wound measured 1.0 x 1.0 cm. (*Id.* at 12–13). Amniocore was applied following the debridement. (*Id.* at 13, 15).

3. The Beneficiary was again seen on [redacted] for debridement of the right trochanteric hip pressure ulcer. Prior to the debridement, the wound measured 1.0 x 1.0 cm and had mild/moderate serous drainage and light bloody drainage post debridement. (File 24, p. 29). Six units of Zenith was applied to the wound along with dressing after the debridement. (*Id.* at 30).

4. The [redacted] follow-up states the Beneficiary underwent debridement of the stage 3 chronic pressure ulcer to the right trochanteric hip with the wound measuring 1.0 cm x 1.0 cm. (File 24, p. 41). Six units of Amniocore was applied following the debridement. (*Id.* at 42).

5. The Beneficiary underwent debridement on [redacted] followed by an application of Zenith. (File 24, pp. 54–55). The stage 3 chronic pressure ulcer to the right hip measured 1.0 x 1.0 cm and had a moist, pink wound bed and lightly blood drainage post debridement. (*Id.* at 54).

6. The [redacted] clinical note states the Beneficiary underwent debridement followed by the application of six units of Zenith. (File 24, p. 67). The stage 3 pressure ulcer to the right trochanteric hip measured 1.0 x 1.0 cm. (*Id.*at 66).

7. The Beneficiary's [redacted] progress note states the Beneficiary's condition was improved. (File 24, p. 78). He underwent debridement of the stage 3 pressure ulcer followed by Zenith being applied to the wound site. (*Id.* at 78–79).

8. Follow-up visit note dated [redacted] states the Beneficiary's wound measured 1.0 x 1.0 cm and had a pink, moist wound bed. (File 24, p. 92). He underwent debridement of the stage 3 chronic pressure ulcer to the right trochanteric hip and an application of six units of Zenith graft to the open wound site. (*Id.* at 93).

9. [redacted] the Beneficiary underwent debridement of the chronic stage 3 pressure ulcer to the right trochanteric hip that measured 1.0 x 1.0 cm. (File 24, p. 108).

10. The [redacted] progress note states the Beneficiary's wound measured 1.0 x 1.0 cm. (File 24, p. 122). The Beneficiary underwent debridement followed by an application of six units of Zenith graft to the open wound site. (*Id.* at 123).

11. Dr. Levy signed attestation statements on the same day stating practitioner summaries dated [redacted] and [redacted], were authored by him and accurately reflected signatures/notations made in her capacity in treating the Beneficiary. (File 24, pp. 9, 23, 37, 62, 75, 89, 102, 116).

*Analysis*

The record does not support that the service provided by the Appellant to the Beneficiary meet Medicare coverage criteria. *See* Act § 1862(a)(1)(A). Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. *See id*. Payment is excluded if the medical necessity for the service cannot be substantiated; the services was not billed in compliance with the coding, payment, or billing requirements or was not provided to a beneficiary as billed. *MPIM,* ch. 3, § 3.6.2.5.

In this, the QIC cited to LCD L38902 in its denial. (File 2). A review however shows the LCD was not in effect in the jurisdiction in which the services were provided.[32] Ms. Chew noted the state of Washington where the services occurred is located in the Contractor's jurisdiction F. (Hearing Audio). She and counsel did not identify an applicable LCD in the Contractor's jurisdiction F nor is the undersigned aware of one.[33] (*Id.*). In the absence of an NCD or LCD, Medicare contractors may make individual claim determinations, including whether the item or service meets the statutory requirement of being "reasonable and necessary." *See* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693/ *MPIM,* ch. 13 § 13.5.4.

The undersigned as such must now complete a medical reasonable analysis as to each of the claims at issue and the use of advanced skin substitutes and whether they were safe and effective; whether they are experimental or investigational; and whether they are appropriate based on "the available evidence of general acceptance by the medical community, including peer-reviewed literature, evidence-based consensus statements, and clinical guidelines. *MPIM*, ch. 3, § 3.6.2.2, ch. 13, §§ 13.5.3, 13.5.4.

As noted in the discussion peer reviewed literature above, that advanced skin substitutes at issue are safe and effective for the treatment of patients with venous status ulcers and diabetic foot ulcers. However, the undersigned finds that in addition to determining that there is sufficient evidence to find that these skin substitutes are safe and effective, the record must establish that the use of advanced skin substitutes is implemented after the wound failed to improve after four weeks of standard wound therapy; a treatment plan is implemented including debridement and

[32] https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=38902 [last visited March 26, 2025] shows the LCD is only applicable in jurisdiction J – E which includes California – Entire State; California – Northern; California – Southern; American Samoa; Guam; Hawaii; Northern Mariana Islands; Nevada.
[33] FUTURE EFFECTIVE LCD L39764: Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers (LCD L39764) (April 13, 2025) is set to go in effect in April 2025.

compression therapy; and not to exceed 12 weeks of weekly applications of advanced skin substitute.

The QIC's erroneous application of LCD L38902 does not however change the outcome. Notably there is an absence of documentation in the record showing the Beneficiary engaged in four-weeks of standard wound therapy prior to the start of advance therapy with skin substitute. (Files 11, 24). Specifically, the record lacks evidence of the types of treatment utilized and measurements and characteristics of the wound. (*Id.*) Dr. Levy's testimony that many of his patients receive care elsewhere prior to seeking treatment from him does not negate the Appellant's burden outlined in section 1833(e) of the Act. (Hearing Audio). Had the record included documentation of four weeks of standard wound therapy, albeit from a different provider, home health, or even skilled nursing facility, the outcome of the appeal may have been different.

While the Appellant argued the patient summaries included overcomes much of this, the undersigned finds it to be insufficient due to invalid authentication. Chapter 3, section 3.3.2.4 of the *MPIM* in effect on the dates of service at issue states "[f] medical review purposes, Medicare requires that services provided/ordered/certified be authenticated by the persons responsible for the care of the beneficiary in accordance with Medicare's policies…Providers should not add late signatures to the medical record, (beyond the short delay that occurs during the transcription process) but instead should make use of the signature authentication process." As the QIC correctly summarized in its reconsideration the patient summaries do not contain the date the summary was written, the date the summary was signed, or contain a valid signature by the author of the summary. The undersigned concurs with the QIC's conclusion in that while the Appellant submitted an attestation statement which states the signature was theirs, the patient summary is not an addendum to the medical record and the information contained in the patient summary is not reflected in the medical records. For this reason, the patient summaries cannot be considered in the medical necessity determination.

Although the undersigned is sympathetic to the Appellant's situation, an ALJ lacks the authority to allow Medicare payment for claims that are not reasonable and necessary in accordance with Medicare criteria. As such, the claim is not payable under Medicare.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

**Beneficiary # 7 – [redacted]**
**Dates of service – [redacted]**

**Disposition – Unfavorable**

*Findings of Fact*

1. The 82-year-old female Beneficiary was referred to the Appellant's facility on February 9, 2023, by Lubna Khan, M.D., for a left heel wound present since [redacted] and measuring 2.5 x 2.75 cm. The Beneficiary had diagnoses of unstageable pressure ulcer of left heel and pressure induced deep tissue damage of left heel. (File 21, p. 19).

2. The Beneficiary was seen by Dr. Lubna on [redacted] The progress note states the Beneficiary was seen, among others, for pressure ulcer to the left heel which developed on [redacted] It notes home health was consulted, and they monitored and "did wound orders, until eschar closed over wound with a superficial callous." Debridement was recommended because the wound was "enlarging, infected, pressure, recurrent and worsening … The wound developed in the context or poor cognition, prolonged bedrest, prolonged sitting and traumatic injury … prior treatments include oral antibiotics." (File 11, p. 1423). The unstageable pressure injury measured 3 x 2.75 cm with macerated surrounding skin and necrotic wound bed. (*Id.* at 1425).

3. The [redacted] progress note states the 82-year-old Beneficiary was seen for a stage 4 chronic pressure ulcer of the left planter heel – central. The wound measured 2.5 x 2.5 x. 1.0 cm and had superficially denuded patches of subcutaneous tissue. There was yellow and pink granulation tissue and pink rolled wound edge. Following a debridement, Amniocore graft was applied to the open wound site. (File 21, p. 13).

4. Follow-up from Marc[redacted] the Beneficiary was seen for a stage 4 pressure ulcer of the left plantar heel – central that measured 2.5 x 2.3 x 0.4 cm. It had superficially denuded patches of subcutaneous tissue and pink rolled wound edge. Following debridement, Amniocore graft was applied to the open wound site. (File 21, p. 32). The wound's measurement remained changed following the surgical debridement. (*Id.* at 33).

5. Clinical note dated [redacted] states the Beneficiary underwent debridement of the stage 4 pressure ulcer of the left heel followed by the application of 32 units of carePATCH. The Beneficiary's per- and post-debridement measurements were 2.5 x 2.3 x 0.2 cm. (File 21, pp. 50–51).

6. The Beneficiary again went debridement of the stage 4 pressure ulcer of the left heel on [redacted] 32 units of carePATCH were applied. (File 21, p. 66). The Beneficiary's pre- and post-debridement measurement was 2.5 x 2.3 x. 0.2 cm. (*Id.* at 66 – 67).

7. The [redacted] follow-up note states the Beneficiary's stage 4 pressure ulcer measured 5 x 3 x 2 cm. The ulcer was debrided and Amniocore graft was applied to the open wound site. (File 21, p. 88)

8. Alison M. Stinnett, PA, signed attestation statements on September 11, 2024, stating the practitioner summaries dated [redacted], and [redacted]

[redacted] were authored by her and accurately reflected signatures/notations made in her capacity in treating the Beneficiary. (File 21, pp. 9–10, 26, 44, 60).

9. A similar attestation was signed by Tory Foss, FA on September 11, 2024, for the practitioner summary dated [redacted] (File 21, p. 83).

*Analysis*

The record does not support that the service provided by the Appellant to the Beneficiary meet Medicare coverage criteria. *See* Act § 1862(a)(1)(A). Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. *See id*. Payment is excluded if the medical necessity for the service cannot be substantiated; the services was not billed in compliance with the coding, payment, or billing requirements or was not provided to a beneficiary as billed. *MPIM*, ch. 3, § 3.6.2.5.

In this, the QIC cited to LCD L38902 in its denial. (File 2). A review however shows the LCD was not in effect in the jurisdiction in which the services were provided.[34] Ms. Chew noted the state of Washington where the services occurred is located in the Contractor's jurisdiction F. (Hearing Audio). She and counsel did not identify an applicable LCD in the Contractor's jurisdiction F nor is the undersigned aware of one.[35] (*Id.*). In the absence of an NCD or LCD, Medicare contractors may make individual claim determinations, including whether the item or service meets the statutory requirement of being "reasonable and necessary." *See* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693/ *MPIM*, ch. 13 § 13.5.4.

The undersigned as such must now complete a medical reasonable analysis as to each of the claims at issue and the use of advanced skin substitutes and whether they were safe and effective; whether they are experimental or investigational; and whether they are appropriate based on "the available evidence of general acceptance by the medical community, including peer-reviewed literature, evidence-based consensus statements, and clinical guidelines. *MPIM*, ch. 3, § 3.6.2.2, ch. 13, §§ 13.5.3, 13.5.4.

As noted in the discussion peer reviewed literature above, that advanced skin substitutes at issue are safe and effective for the treatment of patients with venous status ulcers and diabetic foot ulcers. However, the undersigned finds that in addition to determining that there is sufficient evidence to find that these skin substitutes are safe and effective, the record must establish that the use of advanced skin substitutes is implemented after the wound failed to improve after four weeks of standard wound therapy; a treatment plan is implemented including debridement and compression therapy; and not to exceed 12 weeks of weekly applications of advanced skin substitute.

The QIC's erroneous application of LCD L38902 does not however change the outcome. Notably there is an absence of documentation in the record showing the Beneficiary engaged in four-weeks of standard wound therapy prior to the start of advance therapy with skin substitute.

---

[34] https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=38902 [last visited March 26, 2025] shows the LCD is only applicable in jurisdiction J – E which includes California – Entire State; California – Northern; California – Southern; American Samoa; Guam; Hawaii; Northern Mariana Islands; Nevada.

[35] FUTURE EFFECTIVE LCD L39764: Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers (LCD L39764) (April 13, 2025) is set to go in effect in April 2025.

(Files 11, 21). Specifically, the record lacks evidence of the types of treatment utilized and measurements and characteristics of the wound. (*Id.*) Dr. Levy's testimony that many of his patients receive care elsewhere prior to seeking treatment from him does not negate the Appellant's burden outlined in section 1833(e) of the Act. (Hearing Audio). Had the record included documentation of four weeks of standard wound therapy, albeit from a different provider, home health, or even skilled nursing facility, the outcome of the appeal may have been different.

While the Appellant argued the patient summaries included overcomes much of this, the undersigned finds it to be insufficient due to invalid authentication. Chapter 3, section 3.3.2.4 of the *MPIM* in effect on the dates of service at issue states "[f] medical review purposes, Medicare requires that services provided/ordered/certified be authenticated by the persons responsible for the care of the beneficiary in accordance with Medicare's policies…Providers should not add late signatures to the medical record, (beyond the short delay that occurs during the transcription process) but instead should make use of the signature authentication process." As the QIC correctly summarized in its reconsideration the patient summaries do not contain the date the summary was written, the date the summary was signed, or contain a valid signature by the author of the summary. The undersigned concurs with the QIC's conclusion in that while the Appellant submitted an attestation statement which states the signature was theirs, the patient summary is not an addendum to the medical record and the information contained in the patient summary is not reflected in the medical records. For this reason, the patient summaries cannot be considered in the medical necessity determination.

Although the undersigned is sympathetic to the Appellant's situation, an ALJ lacks the authority to allow Medicare payment for claims that are not reasonable and necessary in accordance with Medicare criteria. As such, the claim is not payable under Medicare.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

**Beneficiary # 8 – [redacted]**
**Dates of service – [redacted]**
**Disposition – Unfavorable**

*Findings of Fact*

1. The 82-year-old female Beneficiary was referred to the Appellant's facility by Kyle Piner, DPM, on [redacted] for a dorsum left foot wound measured 5.2 x 4.8 x 1.2 cm and with the fourth extensor tendon exposed. The Beneficiary had a diagnosis of non-pressure chronic ulcer of other part of left foot with fat layer exposed. The referral notes the two weeks old wound was secondary to crush injury after a horse stepped on the Beneficiary's foot. (File 32, p. 19).

2. The Beneficiary's preoperative dimension of the chronic skin ulcer to the central segment of left dorsal foot (2) was 3.0 x 1.0 cm. (File 32, p. 12).

3. Alison M. Stinnett, PA, signed an attestation statement on September 11, 2024, stating the practitioner summary dated [redacted] was authored by her and accurately reflected signatures/notations made in her capacity in treating the Beneficiary. (File 32, p. 9).

*Analysis*

The record does not support that the service provided by the Appellant to the Beneficiary meet Medicare coverage criteria. *See* Act § 1862(a)(1)(A). Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. *See id*. Payment is excluded if the medical necessity for the service cannot be substantiated; the services was not billed in compliance with the coding, payment, or billing requirements or was not provided to a beneficiary as billed. *MPIM*, ch. 3, § 3.6.2.5.

In this, the QIC cited to LCD L38902 in its denial. (File 2). A review however shows the LCD was not in effect in the jurisdiction in which the services were provided.[36] Ms. Chew noted the state of Washington where the services occurred is located in the Contractor's jurisdiction F. (Hearing Audio). She and counsel did not identify an applicable LCD in the Contractor's jurisdiction F nor is the undersigned aware of one.[37] (*Id.*). In the absence of an NCD or LCD, Medicare contractors may make individual claim determinations, including whether the item or service meets the statutory requirement of being "reasonable and necessary." *See* 54 Fed. Reg. 4304 (Jan. 30, 1989); 60 Fed. Reg. 48417 (Sept. 19, 1995); 68 Fed. Reg. 63693/ *MPIM*, ch. 13 § 13.5.4.

The undersigned as such must now complete a medical reasonable analysis as to each of the claims at issue and the use of advanced skin substitutes and whether they were safe and effective; whether they are experimental or investigational; and whether they are appropriate based on "the available evidence of general acceptance by the medical community, including peer-reviewed

[36] https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=38902 [last visited March 26, 2025] shows the LCD is only applicable in jurisdiction J – E which includes California – Entire State; California – Northern; California – Southern; American Samoa; Guam; Hawaii; Northern Mariana Islands; Nevada.
[37] FUTURE EFFECTIVE LCD L39764: Skin Substitute Grafts/Cellular and Tissue-Based Products for the Treatment of Diabetic Foot Ulcers and Venous Leg Ulcers (LCD L39764) (April 13, 2025) is set to go in effect in April 2025.

literature, evidence-based consensus statements, and clinical guidelines. *MPIM*, ch. 3, § 3.6.2.2, ch. 13, §§ 13.5.3, 13.5.4.

As noted in the discussion peer reviewed literature above, that advanced skin substitutes at issue are safe and effective for the treatment of patients with venous status ulcers and diabetic foot ulcers. However, the undersigned finds that in addition to determining that there is sufficient evidence to find that these skin substitutes are safe and effective, the record must establish that the use of advanced skin substitutes is implemented after the wound failed to improve after four weeks of standard wound therapy; a treatment plan is implemented including debridement and compression therapy; and not to exceed 12 weeks of weekly applications of advanced skin substitute.

The QIC's erroneous application of LCD L38902 does not however change the outcome. Notably there is an absence of documentation in the record showing the Beneficiary engaged in four-weeks of standard wound therapy prior to the start of advance therapy with skin substitute. (Files 11, 32). Specifically, the record lacks evidence of the types of treatment utilized and measurements and characteristics of the wound. (*Id.*) Dr. Levy's testimony that many of his patients receive care elsewhere prior to seeking treatment from him does not negate the Appellant's burden outlined in section 1833(e) of the Act. (Hearing Audio). Had the record included documentation of four weeks of standard wound therapy, albeit from a different provider, home health, or even skilled nursing facility, the outcome of the appeal may have been different.

While the Appellant argued the patient summaries included overcomes much of this, the undersigned finds it to be insufficient due to invalid authentication. Chapter 3, section 3.3.2.4 of the *MPIM* in effect on the dates of service at issue states "[f] medical review purposes, Medicare requires that services provided/ordered/certified be authenticated by the persons responsible for the care of the beneficiary in accordance with Medicare's policies…Providers should not add late signatures to the medical record, (beyond the short delay that occurs during the transcription process) but instead should make use of the signature authentication process." As the QIC correctly summarized in its reconsideration the patient summaries do not contain the date the summary was written, the date the summary was signed, or contain a valid signature by the author of the summary. The undersigned concurs with the QIC's conclusion in that while the Appellant submitted an attestation statement which states the signature was theirs, the patient summary is not an addendum to the medical record and the information contained in the patient summary is not reflected in the medical records. For this reason, the patient summaries cannot be considered in the medical necessity determination.

Although the undersigned is sympathetic to the Appellant's situation, an ALJ lacks the authority to allow Medicare payment for claims that are not reasonable and necessary in accordance with Medicare criteria. As such, the claim is not payable under Medicare

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

*Liability*

For the services denied, the issue remains whether payment may nonetheless be made for the services as billed under section 1879 of the Act. The file did not contain an advance beneficiary notice or any other form of notice. Thus, there is no evidence that the Beneficiary knew, or should have known, that the services would not be covered by Medicare, and the Beneficiary's liability is waived. However, the provider, practitioner, or supplier is presumed to have known the requirements for the submitted claims. *See* 42 C.F.R. § 411.406(e). The record contains no evidence to rebut the presumption that the provider knew, or should have known, that the services were not covered by Medicare. Therefore, the services are not payable under section 1879(a) of the Act, and the provider is liable for the non-covered costs.

*Waiver of Overpayment*

Section 1870 of the Act governs the recovery of overpayments. A provider's liability for an overpayment of Medicare benefits may be waived if the provider was not at fault in creating the overpayment. Chapter 3, section 90 of the *Medicare Financial Management Manual* ("*MFMM*"), provides that a provider is without fault, if it exercised reasonable care in billing for, and accepting, the payment on the basis of the information available to it, including, but not limited to, the Medicare instructions and regulations, it had a reasonable basis for assuming the payment was correct. As above, a provider is expected to know the rules and procedures of Medicare and cannot be found to be without fault in creating the overpayment. A provider is not without fault when it billed and received payment for services for which it should have known it was not entitled. The services provided by the Appellant to the Beneficiary on the dates of service do not meet Medicare coverage criteria and are not reasonable and necessary. The Appellant is not entitled to payment pursuant to section 1879 of the Act, or waiver of overpayment under pursuant to section 1870 of the Act and is liable for the non-covered charges.

## CONCLUSIONS OF LAW

The services provided by the Appellant to the Beneficiary on the dates of service, do not meet Medicare coverage criteria. The services are not reasonable and necessary pursuant to section 1862(a)(1)(A) of the Act. Accordingly, the Appellant is not entitled to Medicare payment and remains liable for the costs incurred pursuant to section 1879 of the Act. The Appellant is not without fault with respect to the overpayment and is, accordingly, responsible for the overpayment pursuant to section 1870 of the Act.

## ORDER

The undersigned directs the Medicare Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Angela Wilt
Administrative Law Judge

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| | |
|---|---|
| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| | |
|---|---|
| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated__________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Arlington, VA**

| | | | |
|---|---|---|---|
| Appeal of: | **INNOVATIVE WOUND HEALING & DERMATOLOGY** | OMHA Appeal No.: | **3-14494568214** |
| Beneficiary: | **Multiple** | Medicare Part: | **B** |
| Medicare No.: | **Multiple** | Before: | **Angela Wilt**<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Medical & Related: Medical Records | File 11 | 33 | : | 1458 |
| Medical & Related: Post additional documentation: FS | File 21 | 1 | : | 90 |
| Medical & Related: Post additional documentation: OL | File 24 | 1 | : | 123 |
| Medical & Related: Post additional documentation: RM | File 25 | 1 | : | 37 |
| Medical & Related: Post additional documentation: RH | File 27 | 1 | : | 33 |
| Medical & Related: Post additional documentation: MB | File 28 | 1 | : | 202 |
| Medical & Related: Post additional documentation: KC | File 31 | 1 | : | 161 |
| Medical & Related: Post additional documentation: JS | File 32 | 1 | : | 30 |
| Medical & Related: Post additional documentation: VF | File 33 | 1 | : | 17 |
| Guidance: Post additional documentation: Noridian Artice future effective | File 22 | 1 | : | 23 |
| Guidance: Post additional documentation: A56696 CGS | File 23 | 1 | : | 15 |
| Guidance: Post additional documentation: 1st Quarter 2020 Coding cycle drug | File 26 | 1 | : | 73 |
| Guidance: Post additional dcoumentation: L36690 CGS in effect time service | File 29 | 1 | : | 23 |
| Guidance: Post additional documentation: Noridian future LCD L39764 | File 30 | 1 | : | 72 |
| Position Statements: Noridian Position Paper | File 15 | 1 | : | 7 |
| Procedural - CMS Levels: Redetermination | File 10 | 1 | : | 76 |
| Procedural - CMS Levels: Redetermination | File 11 | 1 | : | 32 |
| Procedural - CMS Levels: Redetermination | File 16 | 1 | : | 1458 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : | 44 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : | 3 |
| Procedural - CMS Levels: Redetermination | File 34 | 298 | : | 303 |
| Procedural - CMS Levels: Redetermination | File 34 | 624 | : | 629 |
| Procedural - CMS Levels: MAC decision - DOS - March 31, 2023 | File 35 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - May 5, 2023 | File 36 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - July 28, 2023 | File 37 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - August 4, 2023 | File 38 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - July 21, 2023 | File 39 | 1 | : | 11 |

Index of the Administrative Record and Exhibit List

| | | | | |
|---|---|---|---|---|
| Procedural - CMS Levels: Claim information | File 4 | 1 | : | 1 |
| Procedural - CMS Levels: MAC Decision - DOS - March 31, 2023 | File 40 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - April 14, 2023 | File 41 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - April 28, 2023 | File 42 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - March 31, 2023 | File 43 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - April 28, 2023 | File 44 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - May 31, 2023 | File 45 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - May 31, 2023 | File 46 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - March 4, 2023 | File 47 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - July 7, 2023 | File 48 | 1 | : | 11 |
| Procedural - CMS Levels: MAC Decision - DOS - March 4, 2023 | File 49 | 1 | : | 12 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : | 1 |
| Procedural - CMS Levels: MAC Decision - DOS - March 11, 2023 | File 50 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - February 11, 2023 | File 51 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 10, 2023 | File 52 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 29, 2023 | File 53 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 29, 2023 | File 54 | 1 | : | 11 |
| Procedural - CMS Levels: MAC Decision - July 14, 2023 | File 55 | 1 | : | 11 |
| Procedural - CMS Levels: MAC Decision - DOS - March 18, 2023 | File 56 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - March 25, 2023 | File 57 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - February 19, 2023 | File 58 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 29, 2023 | File 59 | 1 | : | 11 |
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : | 50 |
| Procedural - CMS Levels: MAC Decision - DOS - February 4, 2023 | File 60 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - March 18, 2023 | File 61 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - March 25, 2023 | File 62 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 30, 2023 | File 63 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 21, 2023 | File 64 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - August 11, 2023 | File 65 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - March 11, 2023 | File 66 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 10, 2023 | File 67 | 1 | : | 11 |
| Procedural - CMS Levels: MAC Decision - DOS - May 5, 2023 | File 68 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - March 4, 2023 | File 69 | 1 | : | 12 |

| | | | |
|---|---|---|---|
| Procedural - CMS Levels: Overpayment Demand Letter | File 7 | 1 | : 176 |
| Procedural - CMS Levels: MAC Decision - DOS - April 21, 2023 | File 70 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - May 19, 2023 | File 71 | 1 | : 12 |
| Procedural - CMS Levels: MAC decision - DOS - May 19, 2023 | File 72 | 1 | : 12 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 8 | 1 | : 2 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 9 | 1 | : 17 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : 29 |
| Procedural - OMHA Level: Notice of Hearing: 2-18-25 | File 12 | 1 | : 19 |
| Procedural - OMHA Level: Response to Notice of Hrg: Rep for Appellant | File 13 | 1 | : 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: Contractor | File 14 | 1 | : 2 |
| Procedural - OMHA Level: Party request/motion: Rep for Appellant | File 17 | 1 | : 6 |
| Procedural - OMHA Level: New evidence good cause statement: Rep for Appellant | File 19 | 1 | : 6 |
| Procedural - OMHA Level: Post Additional Documentation: Common Exhibit 5 | File 20 | 1 | : 119 |
| Proceeding (Audios): Hearing audio: 2-18-25 | File 18 | 1 | : 1 |

**Exhibit Records for beneficiary [redacted]**

| | File Name | Administrative File Reference Page Range | |
|---|---|---|---|
| Medical & Related: Medical Records | File 11 | 33 | : 1458 |
| Medical & Related: Post additional documentation: FS | File 21 | 1 | : 90 |
| Guidance: Post additional documentation: Noridian Artice future effective | File 22 | 1 | : 23 |
| Guidance: Post additional documentation: A56696 CGS | File 23 | 1 | : 15 |
| Guidance: Post additional documentation: 1st Quarter 2020 Coding cycle drug | File 26 | 1 | : 73 |
| Guidance: Post additional dcoumentation: L36690 CGS in effect time service | File 29 | 1 | : 23 |
| Guidance: Post additional documentation: Noridian future LCD L39764 | File 30 | 1 | : 72 |
| Position Statements: Noridian Position Paper | File 15 | 1 | : 7 |
| Procedural - CMS Levels: Redetermination | File 10 | 1 | : 76 |
| Procedural - CMS Levels: Redetermination | File 11 | 1 | : 32 |
| Procedural - CMS Levels: Redetermination | File 16 | 1 | : 1458 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : 44 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Procedural - CMS Levels: MAC decision - DOS - March 31, 2023 | File 35 | 1 | : 12 |
| Procedural - CMS Levels: Claim information | File 4 | 1 | : 1 |
| Procedural - CMS Levels: MAC Decision - DOS - March 4, 2023 | File 49 | 1 | : 12 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : 1 |
| Procedural - CMS Levels: MAC Decision - DOS - March 18, 2023 | File 56 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - March 25, 2023 | File 57 | 1 | : 12 |

Index of the Administrative Record and Exhibit List

| | | | |
|---|---|---|---|
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : 50 |
| Procedural - CMS Levels: MAC Decision - DOS - March 11, 2023 | File 66 | 1 | : 12 |
| Procedural - CMS Levels: Overpayment Demand Letter | File 7 | 1 | : 176 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 8 | 1 | : 2 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 9 | 1 | : 17 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : 29 |
| Procedural - OMHA Level: Notice of Hearing: 2-18-25 | File 12 | 1 | : 19 |
| Procedural - OMHA Level: Response to Notice of Hrg: Rep for Appellant | File 13 | 1 | : 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: Contractor | File 14 | 1 | : 2 |
| Procedural - OMHA Level: Party request/motion: Rep for Appellant | File 17 | 1 | : 6 |
| Procedural - OMHA Level: New evidence good cause statement: Rep for Appellant | File 19 | 1 | : 6 |
| Procedural - OMHA Level: Post Additional Documentation: Common Exhibit 5 | File 20 | 1 | : 119 |
| Proceeding (Audios): Hearing audio: 2-18-25 | File 18 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

Index of the Administrative Record and Exhibit List

| Exhibit Records for beneficiary [redacted] | Administrative File Reference: File Name | Page Range | |
|---|---|---|---|
| Medical & Related: Medical Records | File 11 | 33 | : 1458 |
| Medical & Related: Post additional documentation: JS | File 32 | 1 | : 30 |
| Guidance: Post additional documentation: Noridian Artice future effective | File 22 | 1 | : 23 |
| Guidance: Post additional documentation: A56696 CGS | File 23 | 1 | : 15 |
| Guidance: Post additional documentation: 1st Quarter 2020 Coding cycle drug | File 26 | 1 | : 73 |
| Guidance: Post additional dcoumentation: L36690 CGS in effect time service | File 29 | 1 | : 23 |
| Guidance: Post additional documentation: Noridian future LCD L39764 | File 30 | 1 | : 72 |
| Position Statements: Noridian Position Paper | File 15 | 1 | : 7 |
| Procedural - CMS Levels: Redetermination | File 10 | 1 | : 76 |
| Procedural - CMS Levels: Redetermination | File 11 | 1 | : 32 |
| Procedural - CMS Levels: Redetermination | File 16 | 1 | : 1458 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : 44 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Procedural - CMS Levels: Claim information | File 4 | 1 | : 1 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : 1 |
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : 50 |
| Procedural - CMS Levels: MAC Decision - DOS - February 4, 2023 | File 60 | 1 | : 12 |
| Procedural - CMS Levels: Overpayment Demand Letter | File 7 | 1 | : 176 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 8 | 1 | : 2 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 9 | 1 | : 17 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : 29 |
| Procedural - OMHA Level: Notice of Hearing: 2-18-25 | File 12 | 1 | : 19 |
| Procedural - OMHA Level: Response to Notice of Hrg: Rep for Appellant | File 13 | 1 | : 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: Contractor | File 14 | 1 | : 2 |
| Procedural - OMHA Level: Party request/motion: Rep for Appellant | File 17 | 1 | : 6 |
| Procedural - OMHA Level: New evidence good cause statement: Rep for Appellant | File 19 | 1 | : 6 |
| Procedural - OMHA Level: Post Additional Documentation: Common Exhibit 5 | File 20 | 1 | : 119 |
| Proceeding (Audios): Hearing audio: 2-18-25 | File 18 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

Index of the Administrative Record and Exhibit List

| Exhibit Records for beneficiary [redacted] | Administrative File Reference | | | |
|---|---|---|---|---|
| | File Name | Page Range | | |
| Medical & Related: Medical Records | File 11 | 33 | : | 1458 |
| Medical & Related: Post additional documentation: KC | File 31 | 1 | : | 161 |
| Guidance: Post additional documentation: Noridian Artice future effective | File 22 | 1 | : | 23 |
| Guidance: Post additional documentation: A56696 CGS | File 23 | 1 | : | 15 |
| Guidance: Post additional documentation: 1st Quarter 2020 Coding cycle drug | File 26 | 1 | : | 73 |
| Guidance: Post additional dcoumentation: L36690 CGS in effect time service | File 29 | 1 | : | 23 |
| Guidance: Post additional documentation: Noridian future LCD L39764 | File 30 | 1 | : | 72 |
| Position Statements: Noridian Position Paper | File 15 | 1 | : | 7 |
| Procedural - CMS Levels: Redetermination | File 10 | 1 | : | 76 |
| Procedural - CMS Levels: Redetermination | File 11 | 1 | : | 32 |
| Procedural - CMS Levels: Redetermination | File 16 | 1 | : | 1458 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : | 44 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : | 3 |
| Procedural - CMS Levels: MAC Decision - DOS - May 5, 2023 | File 36 | 1 | : | 12 |
| Procedural - CMS Levels: Claim information | File 4 | 1 | : | 1 |
| Procedural - CMS Levels: MAC Decision - DOS - April 28, 2023 | File 44 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - May 31, 2023 | File 45 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - May 31, 2023 | File 46 | 1 | : | 12 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : | 1 |
| Procedural - CMS Levels: MAC Decision - DOS - June 10, 2023 | File 52 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 29, 2023 | File 53 | 1 | : | 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 29, 2023 | File 59 | 1 | : | 11 |
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : | 50 |
| Procedural - CMS Levels: Overpayment Demand Letter | File 7 | 1 | : | 176 |
| Procedural - CMS Levels: MAC Decision - DOS - May 19, 2023 | File 71 | 1 | : | 12 |
| Procedural - CMS Levels: MAC decision - DOS - May 19, 2023 | File 72 | 1 | : | 12 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 8 | 1 | : | 2 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 9 | 1 | : | 17 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : | 29 |
| Procedural - OMHA Level: Notice of Hearing: 2-18-25 | File 12 | 1 | : | 19 |
| Procedural - OMHA Level: Response to Notice of Hrg: Rep for Appellant | File 13 | 1 | : | 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: Contractor | File 14 | 1 | : | 2 |
| Procedural - OMHA Level: Party request/motion: Rep for Appellant | File 17 | 1 | : | 6 |
| Procedural - OMHA Level: New evidence good cause statement: Rep for Appellant | File 19 | 1 | : | 6 |

| | | | |
|---|---|---|---|
| Procedural - OMHA Level: Post Additional Documentation: Common Exhibit 5 | File 20 | 1 | : 119 |
| Proceeding (Audios): Hearing audio: 2-18-25 | File 18 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

Index of the Administrative Record and Exhibit List

| **Exhibit Records for beneficiary** [redacted] | **Administrative File Reference** | | |
|---|---|---|---|
| | File Name | Page Range | |
| Medical & Related: Medical Records | File 11 | 33 | : 1458 |
| Medical & Related: Post additional documentation: MB | File 28 | 1 | : 202 |
| Guidance: Post additional documentation: Noridian Artice future effective | File 22 | 1 | : 23 |
| Guidance: Post additional documentation: A56696 CGS | File 23 | 1 | : 15 |
| Guidance: Post additional documentation: 1st Quarter 2020 Coding cycle drug | File 26 | 1 | : 73 |
| Guidance: Post additional dcoumentation: L36690 CGS in effect time service | File 29 | 1 | : 23 |
| Guidance: Post additional documentation: Noridian future LCD L39764 | File 30 | 1 | : 72 |
| Position Statements: Noridian Position Paper | File 15 | 1 | : 7 |
| Procedural - CMS Levels: Redetermination | File 10 | 1 | : 76 |
| Procedural - CMS Levels: Redetermination | File 11 | 1 | : 32 |
| Procedural - CMS Levels: Redetermination | File 16 | 1 | : 1458 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : 44 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Procedural - CMS Levels: Redetermination | File 34 | 298 | : 303 |
| Procedural - CMS Levels: Claim information | File 4 | 1 | : 1 |
| Procedural - CMS Levels: MAC Decision - DOS - March 31, 2023 | File 40 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - April 14, 2023 | File 41 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - April 28, 2023 | File 42 | 1 | : 12 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : 1 |
| Procedural - CMS Levels: MAC Decision - DOS - March 11, 2023 | File 50 | 1 | : 12 |
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : 50 |
| Procedural - CMS Levels: MAC Decision - DOS - March 18, 2023 | File 61 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - March 25, 2023 | File 62 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 30, 2023 | File 63 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - May 5, 2023 | File 68 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - March 4, 2023 | File 69 | 1 | : 12 |
| Procedural - CMS Levels: Overpayment Demand Letter | File 7 | 1 | : 176 |
| Procedural - CMS Levels: MAC Decision - DOS - April 21, 2023 | File 70 | 1 | : 12 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 8 | 1 | : 2 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 9 | 1 | : 17 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : 29 |
| Procedural - OMHA Level: Notice of Hearing: 2-18-25 | File 12 | 1 | : 19 |
| Procedural - OMHA Level: Response to Notice of Hrg: Rep for Appellant | File 13 | 1 | : 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: Contractor | File 14 | 1 | : 2 |

| | | | |
|---|---|---|---|
| Procedural - OMHA Level: Party request/motion: Rep for Appellant | File 17 | 1 | : 6 |
| Procedural - OMHA Level: New evidence good cause statement: Rep for Appellant | File 19 | 1 | : 6 |
| Procedural - OMHA Level: Post Additional Documentation: Common Exhibit 5 | File 20 | 1 | : 119 |
| Proceeding (Audios): Hearing audio: 2-18-25 | File 18 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

Index of the Administrative Record and Exhibit List

**Exhibit Records for beneficiary** [redacted]

| | Administrative File Reference | | |
|---|---|---|---|
| | File Name | Page Range | |
| Medical & Related: Medical Records | File 11 | 33 | : 1458 |
| Medical & Related: Post additional documentation: OL | File 24 | 1 | : 123 |
| Guidance: Post additional documentation: Noridian Artice future effective | File 22 | 1 | : 23 |
| Guidance: Post additional documentation: A56696 CGS | File 23 | 1 | : 15 |
| Guidance: Post additional documentation: 1st Quarter 2020 Coding cycle drug | File 26 | 1 | : 73 |
| Guidance: Post additional dcoumentation: L36690 CGS in effect time service | File 29 | 1 | : 23 |
| Guidance: Post additional documentation: Noridian future LCD L39764 | File 30 | 1 | : 72 |
| Position Statements: Noridian Position Paper | File 15 | 1 | : 7 |
| Procedural - CMS Levels: Redetermination | File 10 | 1 | : 76 |
| Procedural - CMS Levels: Redetermination | File 11 | 1 | : 32 |
| Procedural - CMS Levels: Redetermination | File 16 | 1 | : 1458 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : 44 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Procedural - CMS Levels: Redetermination | File 34 | 624 | : 629 |
| Procedural - CMS Levels: MAC Decision - DOS - July 28, 2023 | File 37 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - August 4, 2023 | File 38 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - July 21, 2023 | File 39 | 1 | : 11 |
| Procedural - CMS Levels: Claim information | File 4 | 1 | : 1 |
| Procedural - CMS Levels: MAC Decision - DOS - July 7, 2023 | File 48 | 1 | : 11 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : 1 |
| Procedural - CMS Levels: MAC Decision - DOS - June 29, 2023 | File 54 | 1 | : 11 |
| Procedural - CMS Levels: MAC Decision - July 14, 2023 | File 55 | 1 | : 11 |
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : 50 |
| Procedural - CMS Levels: MAC Decision - DOS - June 21, 2023 | File 64 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - August 11, 2023 | File 65 | 1 | : 12 |
| Procedural - CMS Levels: MAC Decision - DOS - June 10, 2023 | File 67 | 1 | : 11 |
| Procedural - CMS Levels: Overpayment Demand Letter | File 7 | 1 | : 176 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 8 | 1 | : 2 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 9 | 1 | : 17 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : 29 |
| Procedural - OMHA Level: Notice of Hearing: 2-18-25 | File 12 | 1 | : 19 |
| Procedural - OMHA Level: Response to Notice of Hrg: Rep for Appellant | File 13 | 1 | : 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: Contractor | File 14 | 1 | : 2 |
| Procedural - OMHA Level: Party request/motion: Rep for Appellant | File 17 | 1 | : 6 |
| Procedural - OMHA Level: New evidence good cause | File 19 | 1 | : 6 |

| | | | |
|---|---|---|---|
| statement: Rep for Appellant | | | |
| Procedural - OMHA Level: Post Additional Documentation: Common Exhibit 5 | File 20 | 1 | : 119 |
| Proceeding (Audios): Hearing audio: 2-18-25 | File 18 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

Index of the Administrative Record and Exhibit List

| Exhibit Records for beneficiary [redacted] | Administrative File Reference | | |
|---|---|---|---|
| | File Name | Page Range | |
| Medical & Related: Medical Records | File 11 | 33 | : 1458 |
| Medical & Related: Post additional documentation: RH | File 27 | 1 | : 33 |
| Guidance: Post additional documentation: Noridian Artice future effective | File 22 | 1 | : 23 |
| Guidance: Post additional documentation: A56696 CGS | File 23 | 1 | : 15 |
| Guidance: Post additional documentation: 1st Quarter 2020 Coding cycle drug | File 26 | 1 | : 73 |
| Guidance: Post additional dcoumentation: L36690 CGS in effect time service | File 29 | 1 | : 23 |
| Guidance: Post additional documentation: Noridian future LCD L39764 | File 30 | 1 | : 72 |
| Position Statements: Noridian Position Paper | File 15 | 1 | : 7 |
| Procedural - CMS Levels: Redetermination | File 10 | 1 | : 76 |
| Procedural - CMS Levels: Redetermination | File 11 | 1 | : 32 |
| Procedural - CMS Levels: Redetermination | File 16 | 1 | : 1458 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : 44 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Procedural - CMS Levels: Claim information | File 4 | 1 | : 1 |
| Procedural - CMS Levels: MAC Decision - DOS - March 4, 2023 | File 47 | 1 | : 12 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : 1 |
| Procedural - CMS Levels: MAC Decision - DOS - February 11, 2023 | File 51 | 1 | : 12 |
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : 50 |
| Procedural - CMS Levels: Overpayment Demand Letter | File 7 | 1 | : 176 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 8 | 1 | : 2 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 9 | 1 | : 17 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : 29 |
| Procedural - OMHA Level: Notice of Hearing: 2-18-25 | File 12 | 1 | : 19 |
| Procedural - OMHA Level: Response to Notice of Hrg: Rep for Appellant | File 13 | 1 | : 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: Contractor | File 14 | 1 | : 2 |
| Procedural - OMHA Level: Party request/motion: Rep for Appellant | File 17 | 1 | : 6 |
| Procedural - OMHA Level: New evidence good cause statement: Rep for Appellant | File 19 | 1 | : 6 |
| Procedural - OMHA Level: Post Additional Documentation: Common Exhibit 5 | File 20 | 1 | : 119 |
| Proceeding (Audios): Hearing audio: 2-18-25 | File 18 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

Index of the Administrative Record and Exhibit List

**Exhibit Records for beneficiary [redacted]** **Administrative File Reference**

| | File Name | Page Range | |
|---|---|---|---|
| Medical & Related: Medical Records | File 11 | 33 | : 1458 |
| Medical & Related: Post additional documentation: RM | File 25 | 1 | : 37 |
| Guidance: Post additional documentation: Noridian Artice future effective | File 22 | 1 | : 23 |
| Guidance: Post additional documentation: A56696 CGS | File 23 | 1 | : 15 |
| Guidance: Post additional documentation: 1st Quarter 2020 Coding cycle drug | File 26 | 1 | : 73 |
| Guidance: Post additional dcoumentation: L36690 CGS in effect time service | File 29 | 1 | : 23 |
| Guidance: Post additional documentation: Noridian future LCD L39764 | File 30 | 1 | : 72 |
| Position Statements: Noridian Position Paper | File 15 | 1 | : 7 |
| Procedural - CMS Levels: Redetermination | File 10 | 1 | : 76 |
| Procedural - CMS Levels: Redetermination | File 11 | 1 | : 32 |
| Procedural - CMS Levels: Redetermination | File 16 | 1 | : 1458 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : 44 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Procedural - CMS Levels: Claim information | File 4 | 1 | : 1 |
| Procedural - CMS Levels: MAC Decision - DOS - March 31, 2023 | File 43 | 1 | : 12 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : 1 |
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : 50 |
| Procedural - CMS Levels: Overpayment Demand Letter | File 7 | 1 | : 176 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 8 | 1 | : 2 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 9 | 1 | : 17 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : 29 |
| Procedural - OMHA Level: Notice of Hearing: 2-18-25 | File 12 | 1 | : 19 |
| Procedural - OMHA Level: Response to Notice of Hrg: Rep for Appellant | File 13 | 1 | : 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: Contractor | File 14 | 1 | : 2 |
| Procedural - OMHA Level: Party request/motion: Rep for Appellant | File 17 | 1 | : 6 |
| Procedural - OMHA Level: New evidence good cause statement: Rep for Appellant | File 19 | 1 | : 6 |
| Procedural - OMHA Level: Post Additional Documentation: Common Exhibit 5 | File 20 | 1 | : 119 |
| Proceeding (Audios): Hearing audio: 2-18-25 | File 18 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

Index of the Administrative Record and Exhibit List

| **Exhibit Records for beneficiary** [redacted] | **Administrative File Reference** | | |
|---|---|---|---|
| | File Name | Page Range | |
| Medical & Related: Medical Records | File 11 | 33 | : 1458 |
| Medical & Related: Post additional documentation: VF | File 33 | 1 | : 17 |
| Guidance: Post additional documentation: Noridian Artice future effective | File 22 | 1 | : 23 |
| Guidance: Post additional documentation: A56696 CGS | File 23 | 1 | : 15 |
| Guidance: Post additional documentation: 1st Quarter 2020 Coding cycle drug | File 26 | 1 | : 73 |
| Guidance: Post additional dcoumentation: L36690 CGS in effect time service | File 29 | 1 | : 23 |
| Guidance: Post additional documentation: Noridian future LCD L39764 | File 30 | 1 | : 72 |
| Position Statements: Noridian Position Paper | File 15 | 1 | : 7 |
| Procedural - CMS Levels: Redetermination | File 10 | 1 | : 76 |
| Procedural - CMS Levels: Redetermination | File 11 | 1 | : 32 |
| Procedural - CMS Levels: Redetermination | File 16 | 1 | : 1458 |
| Procedural - CMS Levels: Reconsideration | File 2 | 1 | : 44 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 3 | 1 | : 3 |
| Procedural - CMS Levels: Claim information | File 4 | 1 | : 1 |
| Procedural - CMS Levels: Request for Redetermination | File 5 | 1 | : 1 |
| Procedural - CMS Levels: MAC Decision - DOS - February 19, 2023 | File 58 | 1 | : 12 |
| Procedural - CMS Levels: Request for Reconsideration | File 6 | 1 | : 50 |
| Procedural - CMS Levels: Overpayment Demand Letter | File 7 | 1 | : 176 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 8 | 1 | : 2 |
| Procedural - CMS Levels: Party-Contractor Correspondence | File 9 | 1 | : 17 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 1 | 1 | : 29 |
| Procedural - OMHA Level: Notice of Hearing: 2-18-25 | File 12 | 1 | : 19 |
| Procedural - OMHA Level: Response to Notice of Hrg: Rep for Appellant | File 13 | 1 | : 3 |
| Procedural - OMHA Level: Response to Notice of Hrg: Contractor | File 14 | 1 | : 2 |
| Procedural - OMHA Level: Party request/motion: Rep for Appellant | File 17 | 1 | : 6 |
| Procedural - OMHA Level: New evidence good cause statement: Rep for Appellant | File 19 | 1 | : 6 |
| Procedural - OMHA Level: Post Additional Documentation: Common Exhibit 5 | File 20 | 1 | : 119 |
| Proceeding (Audios): Hearing audio: 2-18-25 | File 18 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

## ATTACHMENT A

| Beneficiary Name | Medicare No. | Date(s) of Service |
|---|---|---|
| [redacted] | *****P1GU77 | [redacted] |
| [redacted] | *****56DJ82 | [redacted] |
| [redacted] | *****A7PC57 | [redacted] |
| [redacted] | *****10XK63 | [redacted] |
| [redacted] | *****43QJ96 | [redacted] |
| [redacted] | *****N5KY00 | [redacted] |
| [redacted] | *****Y5JU44 | [redacted] |
| [redacted] | *****J0YU05 | [redacted] |